UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

_____

SHIRLEY D. SPYCHALLA,

          Plaintiff,

v.

BOEING AEROSPACE OPERATIONS, INC.,
et al.,

          Defendants.

Case No.: 11-C-497

_____

**BRIEF IN SUPPORT OF DEFENDANT CESSNA AIRCRAFT COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

_____

Plaintiff Shirley Spychalla claims that her late husband, Leonard Spychalla, was exposed to asbestos during his career as a pilot and aircraft mechanic and that such exposure caused him to develop mesothelioma. She pleads causes of action in negligence and strict products liability against various manufacturers of aircraft and/or components, including Defendant Cessna Aircraft Company ("Cessna").[1] (*See* Compl. ¶¶ 8-24, 33-36.) She started this litigation by filing a complaint in the Wisconsin Circuit Court for Milwaukee County in May 2009. The state court case was eventually dismissed, and the present federal action was commenced in May 2011 and transferred to MDL 875 in the Eastern District of Pennsylvania soon thereafter. The case is now back in this Court on remand from the MDL.

_____

[1] Other defendants named at one point or another in this litigation are AVCO Corporation, Allison Engine Company, Boeing Aerospace Operations, Inc., Cirrus Enterprises, Inc., Continental Motors, Inc., Dana Corporation, Dexter Hysol Aerospace, Inc., Eaton Corporation, Federal-Mogul Corporation, General Dynamics Corporation, Goodrich Corporation, Hawker Beechcraft Corporation, Honeywell International, Inc., IMO Industries, Melrath Supply and Gasket Company, Metropolitan Life Insurance Company, Michelin North America, Inc., Parker-Hannifan Corporation, Square-D Company, Textron, Inc., The Goodyear Tire & Rubber Company, Twin Commander Aircraft International, LLC, Union Carbide Corporation, and United Technologies Corporation.

16692713v1 0911102

After almost five years of litigation, Plaintiff has no evidence—either from documents, the testimony of lay witnesses, or admissible opinions of experts—that Mr. Spychalla worked with or around an asbestos-containing product designed, manufactured, sold, or otherwise distributed by Cessna, or that any such work was a substantial factor in causing the alleged injuries. As set forth below, even if Plaintiff could establish that Mr. Spychalla <u>may</u> have worked with or around a third party's <u>replacement parts</u> on a Cessna aircraft, such facts would not be a basis for any claim against Cessna. Wisconsin appellate courts have consistently refused to impose liability on a defendant for products it did not manufacture, sell, or otherwise place into the stream of commerce. *See **Schreiner v. Wieser Concrete Prods.***, 2006 WI App 138, ¶ 16, 294 Wis. 2d 832, 720 N.W.2d 525 (holding that an ancillary component manufacturer "has no duty to warn regarding the dangers associated with a separate manufacturer's defective products"); *see also **Pomplun v. Rockwell Int'l Corp.***, 203 Wis. 2d 303, 307-09, 552 N.W.2d 632 (Ct. App. 1996); ***Shawver v. Roberts Corp.***, 90 Wis. 2d 672, 681-87, 280 N.W.2d 226 (1979); Recognizing this so-called "bare metal defense," Wisconsin trial courts have followed these and similar cases from other jurisdictions in dismissing asbestos claims against defendant manufacturers. (*See* Larsen Aff. Ex. 2**,** Ex. 3, Ex. 4.) The result should be the same here.

Moreover, as set forth in Cessna's parallel Motion to Exclude, the opinions of Plaintiff's experts, Michael Plavchan, Rodney Doss, and Steven Paskal, lack any factual foundation in the record, are unreliable under the standards for the admissibility of expert testimony set in Fed. R. Evid. 702 and interpreted by the U.S. Supreme Court in ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993), and therefore cannot support Plaintiff's claims. Because Plaintiff cannot establish her claims without (or even with) these opinions, her complaint against Cessna should be dismissed. Cessna therefore respectfully moves for

16692713v1 0911102

summary judgment dismissing all claims against it with prejudice and with costs, pursuant to Fed. R. Civ. P. 56(a), (c).

**FACTS**

Mr. Spychalla worked as a pilot and/or mechanic for several employers in Wisconsin: (1) Langlade County Airport in Antigo from 1958 to 1960; (2) Gran-Aire, Inc. in Milwaukee from 1960 to 1962; (3) Grimm Flying Service in Wausau from 1962 to 1966; (4) Basler Flight Service ("Basler") in Oshkosh from 1966 to 1972; (4) the Wisconsin Department of Natural Resources ("DNR") in Madison from 1972 to 1978; and (5) K-C Aviation in Appleton from 1978 to 1991. (Proposed Finding of Fact ("PFF") No. 5; Compl. Ex. B; Larsen Aff. Ex. 5 at Interrog. No. 16.) Plaintiff claims that Mr. Spychalla was exposed to asbestos at one or more of these locations during the course of his employment.  (PFF No. 6; Compl. ¶ 8.)

In her Complaint, Plaintiff generally asserted that the dust or fibers "emanate[ed] from the asbestos products and/or asbestos insulated equipment which was sold, manufactured, mined, distributed, packaged, installed or otherwise placed into commerce by defendants," but alleged no specific facts as to how, when, where, or for how long Mr. Spychalla came in contact with an asbestos-containing product connected in any way to Cessna.  (PFF No. 8; Compl. ¶ 8.)  She did not produce or elicit evidence of such facts in discovery.

## I.    WRITTEN DISCOVERY

Plaintiff served the first of five versions of answers to standard interrogatories in June 2012.  (PFF No. 9; Larsen Aff. Ex. 5.)  One of the standard interrogatories required her to identify the specific asbestos-containing products that she claims Mr. Spychalla was exposed to at specific locations.  (PFF No. 10; Larsen Aff. Ex. 5 at Interrog. No. 19.)  In response to that inquiry, she denied having any knowledge of the sources, locations, or circumstances of Mr. Spychalla's alleged exposures.  (PFF No. 11; Larsen Aff. Ex. 5 at Interrog. No. 19.)  Her answers

3

to standard interrogatories remained largely the same through four subsequent amendments between August and September 2012. (PFF No. 12; s*ee* Larsen Aff. Ex. 6, Ex. 7, Ex. 8, Ex. 9.) As such, neither Plaintiff's original answers nor the amendments thereto provided specific information as to when, where, or how Plaintiff claims Mr. Spychalla was exposed to asbestos while working on or around any asbestos-containing products from Cessna aircraft. (PFF No. 13; *see* Larsen Aff. Ex. 6, Ex. 7, Ex. 8, Ex. 9.)

Seeking more useful and detailed information, Cessna served a set of defendant-specific interrogatories, document requests, and requests for admissions on Plaintiff on June 19, 2012. (PFF No. 14; Larsen Aff. Ex. 10.) Among other things, Cessna asked Plaintiff to provide detailed descriptions of the Cessna products to which Mr. Spychalla was allegedly exposed and to state the date, locations, and circumstances of each exposure. (PFF No. 15; Larsen Aff. Ex. 10.) Cessna also requested all documents supporting Plaintiff's allegations. (PFF No. 16; Larsen Aff. Ex. 10.)

Plaintiff did not answer Cessna's interrogatories until August 28, 2012, and she never responded to any of the document requests. (PFF No. 17; Larsen Aff. Ex. 11.) Rather than provide any of the information requested, her counsel simply raised boilerplate objections and referred to her answers to standard interrogatories. (PFF No. 18; *see* Larsen Aff. Ex. 11.)

Although Plaintiff never responded to any of Cessna's document requests, she attached a copy of an undated and unauthenticated document purporting to be Mr. Spychalla's resume as an exhibit to motions to compel certain discovery from Cessna in September 2012. (PFF No. 19; *see* Larsen Aff. Ex. 12.) The resume was presumably created sometime between 1972 and 1978, as it indicates that Mr. Spychalla's job at the time was with the DNR. (PFF No. 20; Larsen Aff. Ex. 12.) With respect to the DNR, the resume states that Mr. Spychalla "initiated, and for the

16692713v1 0911102

last five years supervised, the maintenance program for the DNR's fleet of 21 aircraft," which included some Cessna models. (PFF No. 21; *see* Larsen Aff. Ex. 12.) The resume does not say what the maintenance program entailed, what specific repairs (if any) Mr. Spychalla performed or observed on any part of a Cessna aircraft, or how any such repairs could have exposed him to asbestos. (PFF No. 22; *see* Larsen Aff. Ex. 12.)

## II. FACT WITNESSES

Seven fact witnesses were deposed in this case: Plaintiff, her son, and five of Mr. Spychalla's former co-workers. Plaintiff confirmed in her deposition that she did not have any information about what products Mr. Spychalla worked with or around during his career or where he may have been exposed to asbestos. (PFF No. 23; Larsen Aff. Ex. 13 at 16:21-17:4; 65:7-20.) Of the other fact witnesses deposed, only two—Alan Bernette and Dean Spychalla— said anything about Cessna. Neither of them could say whether a Cessna product was the source of any of Mr. Spychalla's alleged asbestos exposure. (PFF No. 24; Larsen Aff. Ex. 14 at 14:1-42:14; Ex. 16 at 66:2-67:24, 140:9-141:3, 151:11-153:1.)

### A. Alan Bernette

Mr. Bernette worked with Mr. Spychalla at Basler from September 1968 through April 1970. (PFF No. 25; Larsen Aff. Ex. 14 at 65:9-14.) Mr. Bernette was a floor mechanic, and his duties included inspections and some basic repairs or maintenance work on various types of aircraft. (PFF No. 26; Larsen Aff. Ex. 14 at 12:14-20.) In his deposition on June 15, 2012, Mr. Bernette testified that, unlike him, Mr. Spychalla was "primarily" a pilot. (PFF No. 27; Larsen Aff. Ex. 14 at 12:21-13:9.) He estimated that Mr. Spychalla spent about half of his time in the mechanics' shop. (*Id.*)

Basler was a Beechcraft dealership while Mr. Bernette worked there with Mr. Spychalla. (PFF No. 28; Larsen Aff. Ex. 14 at 39:2-14.) Mr. Bernette testified that as little as 10 percent of

5

the aircraft that came through Basler were manufactured by Cessna. (PFF No. 29; Larsen Aff. Ex. 14 at 39:2-14.) Although Mr. Bernette remembered seeing a few models of Cessna aircraft—the Cessna 150, 172 or 182—at Basler, he did not specifically recall Mr. Spychalla working on or around any Cessna aircraft at any particular time or for any particular reason. (PFF No. 30; *see* Larsen Aff. Ex. 14 at 14:5-15:20.)

Instead, Mr. Bernette testified generally about his own participation in various maintenance activities, particularly brake pad replacements. (PFF No. 31; *see* Larsen Aff. Ex. 14 at 14:1-42:14.) He said that he had to change brake pads on unspecified aircraft about once per month during his time at Basler. (PFF No. 32; Larsen Aff. Ex. 14 at 37:10-25.) The brake pads came from an outside supplier and <u>not from Cessna</u> or from any other airplane manufacturer. (PFF No. 33; Larsen Aff. Ex. 14 at 31:9-14) Although Mr. Bernette said that "in some airplanes" he had to drill the rivets on certain brake pads during brake changes, he noted that the pads in other planes simply snapped into place. (PFF No. 34; Larsen Aff. Ex. 14 at 35:6-15.) He testified that Basler mechanics never had to grind or sand the brake pads, and he never said that any of the brake pad replacement work created dust. (PFF No. 35; *see* Larsen Aff. Ex. 14 at 28:17-30:9.) He also said that because Mr. Spychalla was primarily a pilot, he may have done only *a couple* of brake changes—again, on unspecified aircraft—in the nearly *two years* that they were both employed at Basler. (PFF No. 36; Larsen Aff. Ex. 14 at 37:10-25.) Mr. Bernette did not know the manufacturer of any parts Mr. Spychalla removed or installed from any aircraft at Basler, nor could he identify a particular airplane that Mr. Spychalla worked on or around at any time. (PFF No. 37; Larsen Aff. Ex. 14 at 68:23-25, 70:9-71:1.)

16692713v1 0911102

Mr. Bernette also said that, as far as he could tell, all of the planes that he saw come through Basler had already had service and maintenance performed on them before the first time that he saw them.  (PFF No. 38; *see* Larsen Aff. Ex. 14 at 68:23-69:6.)  He testified:

> Q.    You described in your testimony today that when you did the inspection process, there were some parts that you would <u>replace</u>.  Correct?
>
> A.    Okay.
>
> Q.    Is that right?
>
> A.    Yes.
>
> Q.    And that when you did service work, there were some parts you would <u>replace</u>, correct?
>
> A.    That's correct.
>
> Q.    And that Basler would furnish the parts that you <u>replaced</u> as part of the inspection and service operations, correct?
>
> A.    Yes.
>
> Q.    And Basler would get those parts typically from a supply house, right?
>
> A.    Yes.
>
> Q.    And am I correct that you don't know what company manufactured any of the particular parts that you installed at Basler?
>
> A.    That's correct.
>
> Q.    And therefore, you don't know what parts – what company manufactured any parts that Mr. Spychalla may have installed at Basler?
>
> A.    That's correct.
>
> Q.    Because these engines and these planes had been in service, you also don't know what company manufactured any parts that you may have removed to replace, correct?
>
> A.    Correct.

16692713v1 0911102

Q.     And likewise, you don't know what company may have manufactured any part that Mr. Spychalla removed to replace during inspection or maintenance activities, correct?

A.     Correct.

(PFF No. 39; Larsen Aff. Ex. 14 at 69:18-71:1 (emphasis added).)

The only other work that Mr. Bernette recalled Mr. Spychalla doing at Basler was removing the exterior inspection panels on the fuselage, tail surfaces, and wings of other unspecified aircraft.  (PFF No. 40; *see* Larsen Aff. Ex. 14 at 34:11-19.)  Mr. Bernette did not say that any part of any aircraft at Basler contained asbestos.  (PFF No. 41; Larsen Aff. Ex. 14 at 14:1-42:14.)

Documents produced by Plaintiff in this case demonstrate that Mr. Bernette's estimate as to how much time Mr. Spychalla spent working as a mechanic at Basler was significantly overstated.  According to Mr. Spychalla's pilot log books, he logged almost 3,000 hours as a pilot between 1966 and 1970.  (PFF No. 42; Larsen Aff. Ex. 15 at 5.)  Mr. Spychalla's flight hours indicate that he was flying extensively as a professional pilot from 1960 to 1971 and was frequently away on overnight and multiday trips throughout that time period.  (PFF No. 43; Larsen Aff. Ex. 15 at 4.)   As such, he would have had little or no time to perform any aircraft maintenance.  (PFF No. 44; Larsen Aff. Ex. 15 at 4..)

**B.     Dean Spychalla**

Dean Spychalla (hereinafter "Dean") is the son of Plaintiff and Mr. Spychalla.  (PFF No. 45; Larsen Aff. Ex. 16 at 17:6-9.)  He is not a licensed pilot or certified airplane mechanic, but he sometimes worked as a seasonal "ramp handler" at Basler while his father worked there.  (PFF No. 46; Larsen Aff. Ex.  16 at 19:13-16, 31:5-16, 35:10-36:3.)  He was a teenager at the time, and his duties consisted entirely of general labor, such as refueling, moving, and cleaning aircraft.  (PFF No. 47; *see* Larsen Aff. Ex. 16 at 19:13-16, 31:5-16, 35:10-36:3.)  He did not

8

participate in any maintenance activities and was never more than a passenger on any of his father's flights.  (PFF No. 48; Larsen Aff. Ex. 16 at 103:19-104:9.)  Although he interacted with his father at Basler to some extent, their jobs, duties, and hours were different.  (PFF No. 49; Larsen Aff. Ex. 16 at 103:19-104:9.)

Dean recalled that his father had a mostly supervisory role with respect to maintenance at Basler.  (PFF No. 50; Larsen Aff. Ex. 16 at 54:18-23, 67:14-17.)  He said that Mr. Spychalla supervised six to eight other mechanics.  (PFF No. 51; Larsen Aff. Ex. 16 at 54:18-23, 67:14-17.) He said that he saw his father remove engines from unspecified Cessna aircraft, but he could not recall how many times he witnessed such work or provide any details about the nature, frequency, or duration of the work, what specific components were involved, or whether any such work created dust.  (PFF No. 52; Larsen Aff. Ex. 16 at 140:9-141:3.)

Dean quit his job at Basler in 1970 and never worked for the same employer as Mr. Spychalla again.  (PFF No. 53; Larsen Aff. Ex. 16 at 34:14-24.)  He said that Mr. Spychalla showed him some pictures of the kinds of aircraft present at the DNR.  (PFF No. 54; Larsen Aff. Ex. 16 at 66:2-15.)  He remembered that Mr. Spychalla was hired as a DNR pilot as well as a mechanic, and he said that his father flew a Cessna 337 to do survey work.  (PFF No. 55; Larsen Aff. Ex. 16 at 66:18-24.)  Dean sometimes visited the DNR hangar, but he did not know Mr. Spychalla's day-to-day responsibilities there.  (PFF No. 56; *see* Larsen Aff. Ex. 16 at 66:2-67:24.)  He thought that his father was primarily a supervisor of several other mechanics, but he could not say for sure.  (PFF No. 57; *see* Larsen Aff. Ex. 16 at 66:2-67:24.)

Besides offering such secondhand descriptions of Mr. Spychalla's employment history, Dean testified that his father worked on a Cessna 172 that he owned for a short time while working as the manager of the Langlade County Airport between 1958 and 1960.  (PFF No. 58;

*see* Larsen Aff. Ex. 16 at 43:2-13.)  He said that the plane was brand new and that Mr. Spychalla

used it for giving flight instruction.  (PFF No. 59; Larsen Aff. Ex. 16 at 43:15-2.)  He said that

when he was a child (in about the third grade), he saw Mr. Spychalla perform maintenance on

the engine and in the cockpit area of the Cessna 172.  (PFF No. 60; Larsen Aff. Ex. 16 at 151:11-

153:1.)  He now believes that such activities required Mr. Spychalla to work with or around

gaskets, cowling, or insulation materials, but he could not provide any details about such work.

(PFF No. 61; Larsen Aff. Ex. 16 at 151:11-153:1.)   He admitted that he did not know if any of

the materials his father worked with on the Cessna 172 contained asbestos.  (PFF No. 62; Larsen

Aff. Ex. 16 at 151:11-153:1.)

 Mr. Spychalla's pilot log books show that he flew a particular Cessna 172 during some of

the time that he was working at Langlade County Airport, beginning in November 1958 and

ending in October 1959 (i.e. less than one year).  (PFF No. 63; Larsen Aff. Ex. 17.)  His flight

time in that aircraft totalled about 150 hours.  (PFF No. 64; Larsen Aff. Ex. 17.)  He logged

almost as many hours in other aircraft during the same time frame.  (*Id.*)  If this was the plane

Mr. Spychalla owned, his use of it amounted to less than two percent of his logged flight time

and ended more than 50 years ago.  (*Id.*)

 None of the witnesses mentioned Cessna in connection with Mr. Spychalla's employment

at any other work sites, i.e., Gran-Aire, Inc., Grimm Flying Service, or K-C Aviation.

## III. PLAINTIFF'S EXPERTS

 Plaintiff hired Mr. Plavchan, Mr. Doss, and Mr. Paskal to offer opinions as to how Mr.

Spychalla could have been exposed to asbestos during his career.  (PFF No. 65; *see* Larsen Aff.

Ex. 18, Ex. 19, Ex. 20.)  Mr. Plavchan and Mr. Doss are both aircraft mechanics, and Mr. Paskal

is an industrial hygienist.  (PFF Nos. 66-67; Larsen Aff. Ex. 18, Ex. 19, Ex. 20.)  They all issued

reports and gave depositions, but like the fact witnesses, they failed to establish that Mr.

Spychalla worked with or around an asbestos-containing product sold, manufactured, or otherwise distributed by Cessna. The facts regarding their opinions and deposition testimony are set forth in detail in the brief supporting Cessna's parallel Motion to Exclude under *Daubert*. To avoid repetition, and in the interest of judicial economy, Cessna incorporates the statement of facts contained in the brief supporting the parallel motion as if fully set forth herein. Stated briefly, Plaintiff's experts testified as follows:

A.    **Michael Plavchan**

Mr. Plavchan assumed that Mr. Spychalla worked on Cessna aircraft at Basler, the DNR, and at Langlade County Airport. (PFF Nos. 74-75; Larsen Aff. Ex. 18 at 5.) Based on those assumptions, he opined that various tasks that Mr. Spychalla would have performed on or around those aircraft would have exposed him to asbestos. (PFF No. 76; *see* Larsen Aff. Ex. 18 at 5-6.) He admitted, however, that he did not know what Mr. Spychalla's actual duties were or how Mr. Spychalla split his time between his pilot and mechanic duties. (PFF No. Larsen Aff. Ex. 21 at 110:10-112:24, 118:25-123:3.) Other than Mr. Spychalla's purported resume, he reviewed no documents, pleadings, or depositions and had no information or documents indicating the year of manufacture, serial numbers, model numbers, variance, or maintenance history of any Mr. Spychalla may have encountered during his career. (PFF Nos. 77-80; Larsen Aff. Ex. 21 at 51:16-52:18, 100:7-101:13.)

Mr. Plavchan testified that he personally used a drill to remove the rivets on brake pads on Cessna aircraft in the 1980s. (PFF No. 84; Larsen Aff. Ex. 21 at 258:10-260:12.) He admitted, however, that the Cessna maintenance manual did not instruct mechanics to ever use a drill while changing brake pads. (PFF No. 85; Larsen Aff. Ex. 21 at 258:10-260:12.) He said that statements in his report regarding the use of a drill are based on his personal experience.

16692713v1 0911102

(PFF No. 86; Larsen Aff. Ex. 21 at 258:10-260:12.) In any event, he admitted that he did not have any information that Mr. Spychalla actually did any brake work on any Cessna model aircraft at any location. (PFF No. 87; Larsen Aff. Ex. 21 at 128:3-6.) Although he tried to calculate how many brake jobs he thought Mr. Spychalla might have done at Basler, he ultimately agreed that his calculations were erroneous and unsupported. (PFF No. 88; Larsen Aff. Ex. 21 at 278:4-25.) Mr. Plavchan admitted that he had no information as to whether Mr. Spychalla ever changed an engine on a Cessna aircraft. (PFF No. 89; Larsen Aff. Ex. 21 at 256:20-25.) With respect to the DNR, he also testified that Mr. Spychalla was a supervisor and therefore would have spent most of his time doing administrative—not maintenance—tasks there. (PFF Nos. 90-91; Ex. 21 at 118:25-123:3.)

**B.** **Rodney Doss**

Mr. Doss' report is brief and does not say anything specific about any defendant's product or any of the job sites at issue in this case. (PFF No. 104; *see* Larsen Aff. Ex. 19.) Mr. Doss offers only general opinions that: (1) Mr. Spychalla worked as an aircraft mechanic; and (2) when aircraft mechanics perform maintenance they would be exposed to asbestos during various activities, such as brake inspection and replacement, removal of engines and engine cowlings, and/or post-shift clean up. (PFF No. 105; Larsen Aff. Ex. 19 at 2.) Mr. Doss admitted in his deposition that, for each of the maintenance activities discussed in his report, *none of his opinions were tied to any specific job duty, job site, time frame, make or model of aircraft or component, procedure, opinion about the asbestos content of any product, or the frequency with which Mr. Spychalla may have worked with or around any such product.* (PFF No. 106; Larsen Aff. Ex. 22 at 60:6-105:7.) He also testified that he did not know what work, if any, Mr. Spychalla performed on a Cessna 172, 182, or 336 or whether Mr. Spychalla ever did any brake work on those models or on a Cessna 180. (PFF No. 109; Larsen Aff. Ex. 22 at 170:7-12, 172:6-

174:16.)  He did not know if any engine cowlings or coatings on engine fuel lines on Cessna aircraft contained asbestos.  (PFF No. 110; Larsen Aff. Ex. 22 at 211:14-212:17.)  Like Mr. Plavchan, he testified that he personally used a drill to remove rivets from "certain brake pads," but admitted that use of a drill is not called for in the Cessna service manual.  (PFF No. 111; Larsen Aff. Ex. 22 at 220:25-221:21.)

### C.    Steven Paskal

Like Mr. Plavchan and Mr. Doss, Mr. Paskal could not say whether Mr. Spychalla worked with or around a product manufactured, sold, or distributed by Cessna or any other specific defendant.  (PFF No. 119; *see* Larsen Aff. Ex. 23 at 62:11-20.)  He also could not say whether any component part of any specific manufacturer's product contained asbestos.  (PFF No. 121; *see id.* Ex. 78:8-79:1, 96:12-97:4.)  He admitted that he does not know what the facts are in this case or what actually happened.  (PFF No. 120; Larsen Aff. Ex. 23 at 54:1-21.)  He could only comment on the "general prevalence" of asbestos in brake pads and gaskets in the relevant time period.  (PFF No. 122; Larsen Aff. Ex. 23 at 41:20-43:16.)

## IV.    RELEVANT PROCEDURAL HISTORY

Fact discovery closed on October 1, 2012 and expert discovery closed on May 31, 2013.  (PFF Nos. 123, 138; *see* E.D. Pa. Case No. 12-CV-60004 Doc. Nos. 112 and 259.)  Cessna filed a combined motion for summary judgment and to exclude the opinions of Plaintiff's experts on July 1, 2013.  (PFF No. 139; E.D. Pa. Case No. 12-CV-60004 Doc. No. 284.)  Numerous other defendants filed similar motions.  (PFF No. 140; *see, e.g.,* E.D. Pa. Case No. 12-CV-6004 Doc. Nos. 276, 281, 283, 285, 286, 287, and 288.)  Briefing on the motions was delayed for several months as a result of a stay on dozens of cases in MDL 875, including the present action.  (PFF No. 141; *see* E.D. Pa. Case No. 12-CV-60004 Doc. No. 290.)  The stay was eventually lifted and briefing on Cessna's motion was completed by March 7, 2014.  (PFF No. 142; E.D. Pa. Case No.

16692713v1 0911102

12-CV-60004 Doc. Nos. 301, 302, and 326.)  Because Cessna's motion raised the "bare metal defense" under Wisconsin law, in addition to arguments under *Daubert*, the MDL district judge denied the motion "with leave to refile" in this Court on August 4, 2014.  (PFF No. 143; *see* E.D. Pa. Case No. 12-CV-60004 Doc. No. 342.)  Pursuant to the MDL court's directive, Cessna now moves this Court for summary judgment dismissing all claims against it pursuant to Fed. R. Civ. P. 56(a), (c).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the materials in the record, including depositions, documents, affidavits, and interrogatory answers, show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  A dispute is "genuine" if it is one upon which a reasonable jury could return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material" facts are "outcome determinative under the governing law."  *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990).  For purposes of summary judgment, all facts are construed in a light most favorable to the non-moving party and all inferences are drawn in that party's favor.  *Chavez v. Cady*, 207 F.3d 901, 902 (7th Cir. 2000).  To overcome summary judgment, the non-moving party must produce enough specific material facts in support of its claim to sustain its burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (explaining that a non-moving party "must come forward with specific facts showing that there is a genuine issue for trial") (internal quotations and emphasis omitted).

## ARGUMENT

Plaintiff's claims against Cessna should be dismissed.  Causation is an essential element of both claims for strict products liability and for negligence under Wisconsin law.  *See Haase v.*

***Badger Mining Corp.***, 2004 WI 197, ¶ 25, 274 Wis. 2d 143, 682 N.W.2d 389 (stating that, to prove a strict liability claim, a plaintiff must establish that an alleged defect was a cause of the plaintiff's injuries or damages); ***Thomas v. Mallett***, 2005 WI 129, ¶ 161, 285 Wis. 2d 236, 701 N.W.2d 523 (explaining that, for negligence purposes, a plaintiff must prove that an alleged defective product caused injuries).   In asbestos cases, Wisconsin courts decide issues of causation based on the totality of the circumstances surrounding the alleged exposure to asbestos. ***Zielinski v. A.P. Green Indus.***, 2003 WI App 85, ¶ 18, 263 Wis. 2d 294, 661 N.W.2d 491.  In doing so, courts must determine whether a particular defendant's asbestos product was a "substantial factor" in contributing to the alleged injuries.  *Id.*   A product is a "substantial factor" when it has "such an effect in producing the harm as to lead a reasonable person to regard it as a cause." *Id.*  The ***Zielinski*** court explained:

> [If] there is no credible evidence upon which the trier of fact can base a reasoned choice between . . . two possible inferences, any finding of causation would be in the realm of speculation and conjecture.  Speculation and conjecture apply to a choice between liability and nonliability when there is no reasonable basis in the evidence upon which a choice of liability can be made.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Id.  See also* ***Miller v. Am. Art Clay Co.***, 2014 WL 2860872, at **4-7 (W.D. Wis. June 23, 2014) (granting summary judgment where the probability that plaintiff was exposed to defendant's asbestos-containing product was 50 percent at best).

In this case, Plaintiff cannot even prove that Mr. Spychalla was exposed to an asbestos-containing product manufactured, designed, sold, or otherwise distributed by Cessna, much less that such a product was a substantial factor in causing the alleged injuries.  As noted above, Plaintiff has not elicited evidence—either witnesses or documents—to support a reasonable

15

16692713v1 0911102

inference that Mr. Spychalla ever worked with or around an asbestos-containing product attributable to Cessna. None of the lay witnesses could say whether any product Mr. Spychalla came in contact with contained asbestos, and no documents suggest that he did. Even if Plaintiff could somehow show that Mr. Spychalla worked with asbestos-containing <u>replacement</u> parts on a Cessna aircraft, such facts would not be a basis for liability under Wisconsin law. *See Schreiner*, 2006 WI App 138 at ¶ 16; *Pomplun*, 203 Wis. 2d at 307-09; *Shawver*, 90 Wis. 2d at 681-87; (Larsen Aff. Ex. 2, Ex. 3, Ex. 4). For this reason alone, Plaintiff's claims against Cessna must be dismissed.

Moreover, Plaintiff cannot establish causation via the opinions of Mr. Plavchan, Mr. Doss, and/or Mr. Paskal, which are inadmissible under *Daubert* for the reasons set forth in Cessna's parallel Motion to Exclude. Without any admissible expert testimony that any Cessna product that Mr. Spychalla actually worked with or around contained asbestos and that such work would have caused him to be exposed to asbestos fibers, Plaintiff's claims cannot survive.

I. **NONE OF THE LAY WITNESSES OR DOCUMENTS IN THIS CASE SUPPORT A REASONABLE INFERENCE THAT MR. SPYCHALLA EVER WORKED WITH OR AROUND A CESSNA PRODUCT THAT CONTAINED ASBESTOS.**

As noted above, Plaintiff has denied having any knowledge or information about what products Mr. Spychalla worked with or around during his career. (PFF No. 23; Larsen Aff. Ex. 13 at 16:21-17:4, 65:7-20.) Her answers to written discovery provided no specific information as to when, where, or how Mr. Spychalla was allegedly exposed to asbestos while working on or around any Cessna aircraft. (PFF Nos. 11-12; *see* Larsen Aff. Ex. 5, Ex. 6, Ex. 7, Ex. 8, Ex. 9.)

Of the other lay witnesses, only Mr. Bernette and Dean Spychalla had anything of substance to say about Cessna, and they both struggled to say what work, if any, Mr. Spychalla did on any Cessna products, let alone that such products contained asbestos. The Western District of Wisconsin recently granted summary judgment in circumstances where a plaintiff

16

similarly failed to demonstrate more than a "mere possibility" of exposure to a defendant's asbestos-containing product. *See Miller*, 2014 WL 2860872, at **4-7.

The plaintiffs in that case claimed that the decedent, Don Peter Miller, was exposed to asbestos contained in a type of artists' clay known as White Clay No. 25 and thereafter developed mesothelioma. *Id.* at *1. The plaintiffs sued the manufacturer of the clay, AMACO, and the supplier of the asbestos therein. *Id.* Mr. Miller was never deposed, and the plaintiffs had no documentary or other tangible evidence to establish that he ever used White Clay No. 25. *Id.* at *4. The plaintiffs relied exclusively on the testimony of Mr. Miller's widow and daughter that: (1) AMACO clay in general was Mr. Miller's favorite brand of clay to use; (2) Mr. Miller was exposed to substantial amounts of dust while working with AMACO clay; and (3) some of the AMACO clay Mr. Miller used had a grayish white appearance consistent with that of White Clay No. 25. *Id.* at **4-5. The plaintiffs claimed that, based on this testimony, a jury could reasonably infer that Mr. Miller used White Clay No. 25. *Id.* at *4.

The Western District disagreed and granted AMACO's motion for summary judgment dismissing the plaintiffs' claims. *Id.* at **5-7. In doing so, the court noted that AMACO manufactured several types of clay that had a grayish white appearance and that not all types contained asbestos. *Id.* The jury therefore would have been "left with no way to make a reasoned finding that Miller used White Clay No. 25 rather than one of AMACO's other white clays that did not contain talc and asbestos." *Id.* at *6. Citing *Zielinski*, the court explained: "[T]his is a case where the choice between liability and non-liability are, at best, evenly balanced. In such a case, the record establishes only a mere possibility of causation, and the jury could find causation only by speculation and conjecture." *Id.* As such, the plaintiffs' claims had to be dismissed. *See id.*

16692713v1 0911102

The same reasoning should apply in this case. Although Mr. Bernette remembered seeing a few models of Cessna aircraft at Basler between 1968 and 1970, he did not recall Mr. Spychalla working on or around any of those aircraft specifically, nor did he say that any component parts of any aircraft contained asbestos. (PFF Nos. 30, 41; *see* Larsen Aff. Ex. 14 at 14:5-15:20.) He said that Cessna models made up a relatively small percentage of the aircraft that came through Basler, (PFF No. 29; Larsen Aff. Ex. 14 at 39:8-10), a fact supported by Mr. Spychalla's purported resume, which does not even list Cessna among the several makes of aircraft Mr. Spychalla flew or maintained at Basler. (PFF No. 21; *see* Larsen Aff. Ex. 12.) Mr. Bernette estimated that Mr. Spychalla changed brake pads—which came from an outside supplier and not from any airplane manufacturer—on unspecified aircraft about once per year. (PFF Nos. 33, 36; *see* Larsen Aff. Ex. 14 at 31:9-14, 35:16-23, 37:10-25.) He also testified that rivets on the brake pads "in some [again, unspecified] airplanes" had to be drilled, but admitted that pads in other aircraft could simply be snapped into place. (PFF No. 34; Larsen Aff. Ex. 14 at 35:11-36:5.) Whether any of the brake jobs Mr. Spychalla actually performed were on Cessna aircraft, as opposed to the many other makes of aircraft at Basler, like Beechcraft or Piper,[2] and whether any pads he worked with or around required drilling, are subjects of pure speculation.

Although Dean testified that he saw his father remove engines from unspecified Cessna aircraft at Basler, he could not recall how many times he witnessed such activities or provide any details about the nature, frequency, or duration of the work, what specific components were involved, or whether any such work created dust. (PFF No. 52; Larsen Aff. Ex. 16 at 140:9-141:3.) He likewise could not provide any details of any maintenance that he remembered his

_____

[2] For unknown reasons, Plaintiff has not maintained an action against the manufacturers of Beechcraft, Piper, Falcon, Gulfstream, Sabreliner, Challenger, Champion, Mooney, Luscombe, Aeronca, Taylorcraft, Aero Commander, Navion, Ercoupe, Stinson, Grumman, Jetstar, Lears, or other makes or models of aircraft that Mr. Spychalla supposedly encountered during his career at one time or another.

16692713v1 0911102

father doing in the engine or cockpit areas on a Cessna 172 in the late 1950s. (PFF Nos. 60, 61; Larsen Aff. Ex. 16 at 151:11-153:1.) In any event, like Mr. Bernette, Dean did not know whether any component of a Cessna aircraft that he thought Mr. Spychalla may have worked on or around contained asbestos. (PFF No. 62; *See* Larsen Aff. Ex. 16 at 137:4-22, 150:4-13, 151:11-152:2.)

Based on previous motion practice in the MDL, Cessna expects that Plaintiff may rely on Mr. Spychalla's purported resume, which was never produced or authenticated in discovery in this case, to support her claims. Besides the fact that the resume is inadmissible hearsay, it does not establish a connection between Cessna and Mr. Spychalla's alleged asbestos exposures. The document indicates only that Mr. Spychalla supervised a maintenance program for a fleet of aircraft, including a handful of Cessna models, owned by the DNR in the 1970s. (PFF Nos. 21, 22; Larsen Aff. Ex. 12.) It does not say what the DNR maintenance program entailed, what specific repairs (if any) Mr. Spychalla performed on any part of a Cessna aircraft, or how any such repairs could have exposed him to asbestos. (*See id.*) Dean is the only witness identified in this case who was ever actually present at the DNR with Mr. Spychalla at any time (albeit as a casual and infrequent visitor), and he has no idea what Mr. Spychalla's day-to-day responsibilities were there. (PFF No. 56; Ex. 16 at 66:2-67:24.)

Mr. Spychalla's pilot log books likewise provide no information to support Plaintiff's claims. In fact, they accomplish quite the opposite. As described above, the log books indicate that Mr. Spychalla spent the vast majority of his time at Basler working as a pilot, leaving him little opportunity to participate in any maintenance activities. (PFF Nos. 42-44; *see* Larsen Aff. Ex. 15 at 5.)

16692713v1 0911102

Such facts are hardly evidence that Mr. Spychalla worked with or around asbestos-containing products manufactured, sold, or otherwise distributed by Cessna at any time or place. As in ***Miller***, Mr. Spychalla's alleged exposure to any asbestos-containing Cessna product is, at best, a "mere possibility" and cannot survive summary judgment. *See **Risse v. Bldg. Servs. Indus. Supply, Inc.***, 2012 WI App 97, ¶¶ 26-29, 344 Wis. 2d 124, 820 N.W.2d 156 (unpublished) (affirming summary judgment where plaintiff had failed to produce evidence of anything more than possibilities that decedent was exposed to defendant's product); ***Singer v. Pneumo Abex, LLC***, 2012 WI App 27, ¶ 18, 339 Wis. 2d 490, 809 N.W.2d 900 (unpublished) (holding that summary judgment is appropriate where the evidence fails to take a determination of alleged exposure outside the realm of speculation and conjecture).

## II. EVEN IF PLAINTIFF SOMEHOW ESTABLISHED THAT MR. SPYCHALLA WAS EXPOSED TO ASBESTOS IN A REPLACEMENT PART USED ON A CESSNA AIRCRAFT, SUCH FACTS WOULD NOT BE A BASIS FOR LIABILITY UNDER WISCONSIN LAW.

Mr. Bernette recalled that Basler mechanics replaced various component parts on the aircraft they serviced, but that all replacement parts were provided to the company by an outside supplier, not by Cessna or any other aircraft manufacturer. (PFF No. 39; Larsen Aff. Ex. 14 at 69:18-71:1.) As noted above, Wisconsin appellate courts have long held that a manufacturer is not liable for another entity's defective product simply because the allegedly defective product was used with or near the manufacturer's product. *See **Schreiner***, 2006 WI App 138 at ¶ 16; ***Pomplun***, 203 Wis. 2d at 307-09; ***Shawver***, 90 Wis. 2d at 681-87. Courts in other jurisdictions have reached that exact conclusion in asbestos cases, recognizing a principle commonly referred to as the "bare metal defense." *See, e.g., **O'Neil v. Crane Co.***, 53 Cal. 4th 335, 342 (2012) (holding that defendant pump manufacturers were not liable for exposures to asbestos in replacement parts added to the pumps by third parties"); ***Braaten v. Saberhagen Holdings***, 198

16692713v1 0911102

P.3d 493 (Wash. 2008) (holding that "the general rule that there is no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in other manufacturers' products applies with regard to replacement packing and gaskets" not manufactured or sold by defendant pump manufacturers); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008) (holding that evaporator manufacturer was not liable for exposures to asbestos insulation applied to the evaporator by third parties). Wisconsin trial courts have recently followed these cases to dismiss claims against defendant manufacturers in circumstances similar to those in the case at bar. (*See* Larsen Aff. Ex. 2, Ex. 3, Ex. 4.)

### a. Wisconsin Appellate Cases

In *Schreiner*, the Wisconsin Court of Appeals affirmed summary judgment for Up North Plastics ("Up North"), a company that manufactured plastic sheeting used to separate layers of feed in a dairy farm's bunker silo. *Schreiner*, 2006 WI App 138 at ¶¶ 15-17. The plaintiff in that case was injured when a layer of silage between two of the sheets collapsed, and he claimed that Up North was required to warn him of the dangers of improperly stacking feed in the silo. The court disagreed, noting that previous Wisconsin decisions "declined to impose a duty to warn on a component manufacturer regarding the dangerous or defective product manufactured by another." *Id.* at ¶ 16. The court concluded that a defendant who supplied a component of a larger system is not liable on the theory that it failed to warn unless the defendant's product was itself defective or the defendant "substantially participated in integrating" its products into the larger system and that integration caused the defect in the system and thus the plaintiff's injury. *Id.* at ¶ 14.

Although *Schreiner* analyzed the issue as though the plastic sheet was a component of the bunker silo, the sheet was not a "component" as that term is typically used. The sheet was

16692713v1 0911102

not purchased by the bunker silo manufacturer, was not installed by that company, was not specified by that company, and was not required in order to use the bunker silo. Rather, the sheet was a separate product made by a separate company that was purchased separately that could be used with the bunker silo. Thus, the case stands for the proposition that where a product itself is not defective and does not cause the injury, its manufacturer has no obligation to warn users about possible dangers from products made and sold by others that may be used in conjunction with the product in question.

The *Pomplun* plaintiff was injured while operating a punch press using a foot switch manufactured by the defendant, Allen-Bradley Company ("Allen-Bradley"). *Pomplun*, 203 Wis. 2d at 306. He claimed that Allen-Bradley was liable in negligence and strict products liability for failing to warn him about possible operating hazards inherent in the use of the switch in the punch press. *Id.* at 307. The Court of Appeals upheld summary judgment dismissing the plaintiff's claims because nothing in the record showed that Allen-Bradley knew or had reason to know how its component would be incorporated into the overall design of the press. *Id.* at 309.

In *Shawver*, the plaintiff was injured while working on a conveyor manufactured by defendant Roberts Corporation ("Roberts"). *Shawver*, 90 Wis. 2d at 676. The plaintiff alleged that controls furnished for the conveyor by a third party were defective, creating circumstances that led to his injury. *See id.* Although the evidence supported the plaintiff's allegation that the controls were defective, the Wisconsin Supreme Court nevertheless upheld dismissal of his negligence and strict liability claims against Roberts. *Id.* at 684-87. Among other things, the court noted that there was no evidence that the conveyor itself was defective or that Roberts had any involvement in the design and location of the controls in the overall system. *Id.*

22

16692713v1 0911102

### b.    Other Courts' Decisions in Asbestos Cases

Courts in other jurisdictions have made similar decisions in asbestos litigation.    For example, the California Supreme Court recently held that defendant pump manufacturers were not liable for a plaintiff sailor's exposures to asbestos in replacement parts added to pumps in a U.S. Navy ship by third parties, even when the original parts contained asbestos.  *See O'Neil*, 266 P.3d at 989.  The court explained:

> [Defendants] gave no warning about the dangers of asbestos in the gaskets and packing originally included in their products. However, [Plaintiff] never encountered these original parts.  His exposure to asbestos came from replacement gaskets and packing and external insulation added to defendants' products long after their installation on the [ship].  There is no dispute that these external and replacement products were made by other manufacturers.  No case law . . . supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchases may or may not use to complement the product bought from the manufacturer.

*Id.* (internal quotations omitted).

The Washington Supreme Court reached the same conclusion in another case arising out of alleged exposures to asbestos-containing replacement parts aboard a U.S. Navy ship in *Braaten*.  In that case, naval personnel applied asbestos-containing insulation to the defendant's pumps and valves after they were installed.  *Braaten*, 198 P.3d at 495.  When the packing and gaskets in the pumps and valves had to be replaced, both the insulation and the packing/gasket material were disturbed, causing the release of asbestos fibers.  *Id.* at 496.

The plaintiff argued that because the defendant manufacturers had originally used asbestos-containing gaskets or packing in the pumps and valves, they should be liable for asbestos exposure arising from the replacement work, even though the defendants did not make or sell replacement packing and gaskets for their products.  *Id.* at 495.  The court disagreed,

23

16692713v1 0911102

holding that "the general rule that there is no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in other manufacturers' products applies with regard to replacement packing and gaskets" not manufactured or sold by the defendants. *Id.* The court noted that it "makes no difference whether the manufacturer knew its products would be used in conjunction with asbestos insulation." *Id.* at 498; *see also Simonetta*, 97 P.3d at 131-38 (holding that negligence and strict liability claims against evaporator manufacturer should have been dismissed where asbestos insulation was applied to the evaporator by third parties)

The California and Washington decisions are consistent with numerous others in state and federal courts around the country. *See, e.g., Conner v. Alfa Laval, Inc.*, 842 F.Supp.2d 791, 797-803 (E.D. Pa. 2012) (discussing *O'Neil*, *Braaten*, and *Simonetta* and holding as a matter of law that a manufacturer is not liable for harm caused by the asbestos products that it did not manufacture or distribute); *Surre v. Foster Wheeler LLC*, 831 F. Supp.2d 797, 801 (S.D.N.Y. 2011) (holding that defendant had no duty to warn against the dangers of asbestos exposure from a third-party's product); *In re Asbestos Litigation*, 2011 WL 322674 (Del. Super. Jan. 18, 2011) (concluding that Idaho would not impose a duty to warn on manufacturers against hazards arising from a product it did not manufacture, distribute, or sell, even if the defendant's product incorporated component parts that poses similar risks and would require replacement);); *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495-97 (6th Cir. 2005) (affirming summary judgment where replacement gaskets used on defendant's pumps were manufactured by another entity); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1029-30 (S.D. Ill. 1989) (granting summary judgment on claims against airplane manufacturer where the only exposures were to asbestos-containing replacement parts that were not supplied by the manufacturer).

24

16692713v1 0911102

### c. Wisconsin Trial Court Decisions

Wisconsin trial courts have recently recognized and applied the "bare metal defense" as described by courts in other jurisdictions. As recently as December 2014, a Milwaukee County circuit court granted summary judgment to a boiler manufacturer on grounds that the manufacturer did not specify or provide asbestos-containing insulation that was applied to the exterior of its boilers by third parties. (*See* Larsen Aff. Ex. 2 at 2-6.) Discussing ***Schreiner*** and ***Pomplun***, Circuit Court Judge David A. Hansher noted that "Wisconsin appellate courts have shown that they are wary of imposing a duty to warn on one manufacturer based on another manufacturer's defective product." (*Id.* Ex. 2 at 4.) As support for his decision, he also cited several cases from foreign jurisdictions—including ***O'Neil***, ***Braaten***, and ***Lindstrom***—finding that a manufacturer has no duty to warn of the danger of asbestos in replacement parts. (*See id.*)

Judge Hansher's opinion followed a similar decision by Milwaukee County Circuit Judge Timothy M. Witkowiak in the same case in December 2012. (*See id.* Ex. 3 at 57-74.) Like Judge Hansher, Judge Witkowiak granted summary judgment to a different boiler manufacturer who was alleged to be liable for exposures to insulation applied to the exterior of the manufacturer's boilers by a third party. (*See id.*) Relying on ***Schreiner***, ***Pomplun***, and ***Shawver***, he also held that the manufacturer did not have a duty to warn the plaintiff about potential hazards of asbestos contained in insulation that it did not specify, supply, or install. (*See id.*)

In a different case in August 2013, Milwaukee County Circuit Judge Jeffrey A. Conen held that an original manufacturer of a product cannot be held liable for failing to warn about dangers in a replacement part made by a different manufacturer and incorporated into the product years after the product was manufactured and sold. (*See id.* Ex. 4 at 21-28.) Defendants in that

16692713v1 0911102

case manufactured pumps that were installed on a U.S. Coast Guard ship on which the plaintiff served. The plaintiff claimed to have been exposed to asbestos in replacement gaskets and packing materials used on the pumps. Judge Conen applied *Schreiner*, *Pomplun*, *O'Neil*, *Braaten*, and *Lindstrom* in granting summary judgment to the pump manufacturers. (*Id.*) He explained:

> After examining all of the briefs and reading the applicable case law, looking at all the supporting documents that have been provided to the Court, the Court will find, at this point, that the holdings from *O'Neil vs. Crane* and *Braaten vs. Saberhagen* are the most persuasive in view of the law in the *Schreiner* and *Pomplun* case. They are factually analogous to the present matter and appear to set forth a policy that the court of appeals, as I said, would determine to be a natural extension of *Schreiner* and *Pomplun*. Although, as we talked before, *Schreiner* and *Pomplun* are not completely analogous to the present case. They do stand for the general proposition that a product manufacturer should not be held liable for a failure to warn of a danger of another manufacturer's product. When *Schreiner* and *Pomplun* are read in conjunction with *O'Neil* and *Braaten*, this Court is persuaded that the defendants did not have a duty to warn of replacement asbestos materials, potentially manufactured by a different company that may have been incorporated into the valves, pumps, and air compressor on the [ship].

(*Id.* Ex. 4 at 27-28.)

### d. Cessna Cannot Be Held Liable for Alleged Exposures to Asbestos in Replacement Parts.

The reasoning of the Wisconsin and other courts cited above apply with equal force to the facts of this case. Plaintiff has offered no evidence that any asbestos-containing parts that might have been originally installed on any Cessna aircraft Mr. Spychalla may have encountered were still in place at the time. Indeed, as noted above, Mr. Bernette testified that all of the aircraft that he saw serviced at Basler had already had service and maintenance performed on them before the first time that he saw them. (PFF No. 38; *see* Larsen Aff. Ex. 14 at 68:23-69:6.) All of the replacement parts used at Basler were supplied by a third party and not by Cessna or any other

16692713v1 0911102

aircraft manufacturer. (PFF No. 39; Larsen Aff. Ex. 14 at 69:18-71:1.) Thus, because there is no information to suggest that Cessna supplied any of the replacement parts for any products that wore out over time, any exposures to those products cannot be a basis for Plaintiff's claims.

## III. PLAINTIFF'S CLAIMS ARE NOT SUPPORTED BY ADMISSIBLE EXPERT TESTIMONY TO ESTABLISH CAUSATION AND MUST BE DISMISSED.

Expert testimony is required under Wisconsin law when "unusually complex or esoteric issues are before the jury." *Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶ 26, 289 Wis. 2d 252, 710 N.W.2d 680. That is, expert testimony is mandatory where the matter is not within the "realm of the ordinary experience of the average juror." *Racine County v. Oracular Milwaukee, Inc.*, 2009 WI App 58, ¶ 35, 317 Wis. 2d 790, 767 N.W.2d 280 (citing *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 6, 186 N.W.2d 258 (1971)). The Wisconsin Court of Appeals has held that liability in asbestos cases must be proven by expert testimony. *See, e.g., Lochmann v. Anchor Packing Co.*, 191 Wis. 2d 360, 530 N.W.2d 69 (Ct. App. 1995) (unpublished). A claim that must be supported by expert testimony cannot survive where such testimony is lacking. *See Netzel*, 51 Wis. 2d at 6-7.

In this case, a lay juror would have no idea what parts of an aircraft, if any, contained asbestos during the time period of Mr. Spychalla's career or if or how a pilot/mechanic in his position could have been exposed to asbestos during the course of his duties. For the reasons described in Cessna's Motion to Exclude, Mr. Plavchan, Mr. Doss, and Mr. Paskal cannot provide expert opinions that would allow jurors to make reasonable determinations as to these issues. Because Plaintiff's claims are therefore unsupported, they should be dismissed.

16692713v1 0911102

## IV. EVEN IF THE OPINIONS OF MR. PLAVCHAN, MR. DOSS, AND/OR MR. PASKAL WERE CONSIDERED ADMISSIBLE, THEY DO NOT SAVE PLAINTIFF'S CLAIMS FROM SUMMARY JUDGMENT.

The opinions of Mr. Plavchan, Mr. Doss, and Mr. Paskal should be excluded under *Daubert* as described in Cessna's Motion to Exclude. Even if their opinions are deemed admissible, however, they do not create genuine issues of fact to overcome summary judgment. The MDL court has consistently held that summary judgment is appropriate where, as here, proffered experts lack any knowledge of the work that decedents actually performed with or around defendants' asbestos-containing products. *See, e.g., Tyler v. Various Defendants*, MDL 875, E.D. Pa. Case No. 10-CV-67422, Doc. No. 442 (Larsen Aff. Ex. 24); *Newell v. 3M Co., et al.*, MDL 875, E.D. Pa. Case No. 09-CV-80050, Doc. No. 246 (Larsen Aff. Ex. 25) (granting summary judgment because the expert's general testimony about the duties of aircraft mechanics did not allow a reasonable jury to draw an inference that the decedent's specific duties would have exposed him to asbestos-containing products). These cases are instructive here.

The *Tyler* plaintiff claimed that decedent John Tyler was exposed to distillers manufactured by Foster Wheeler aboard a U.S. Navy ship. (Larsen Aff. Ex. 24.) Foster Wheeler sought summary judgment, arguing that the plaintiff failed to raise an issue as to whether the distillers were the proximate cause of the decedent's injuries. (*Id.*) The plaintiff opposed the motion and cited the opinion of her expert, Captain Burger, who testified:

> As a machinery repairman, Mr. Tyler would have been exposed to asbestos gaskets . . . while machining the wearing rings in the pump associated with the distiller. While Mr. Tyler does not specifically describe his work on the distiller or its associated pumps, routine maintenance that was required on this unit would have released asbestos fiber into the atmosphere of the machinery room.

(*Id.*)

16692713v1 0911102

In granting the motion, the court noted that Captain Burger had no firsthand knowledge of the work that Mr. Tyler actually performed and held that his testimony did not "evince a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." (*Id.*) (internal quotations omitted). The court explained that, as a result, "[a] jury would be forced to speculate as to how often the routine maintenance described by Captain Burger was performed, and whether this maintenance was a substantial contributing factor to Decedent's injuries." (*Id.*)

The same would be true in this case. As described above, Mr. Plavchan, Mr. Doss, and Mr. Paskal lack any knowledge of what Mr. Spychalla actually did in his career. None of them can say if, when, where, or how often Mr. Spychalla came into contact with any Cessna products, let alone products that allegedly contained asbestos. Their vague and general speculation as to how they think Mr. Spychalla may have been exposed to asbestos associated with a Cessna product does not create more than a "mere possibility" that such exposed ever occurred. That is simply not good enough under Wisconsin law. *See **Risse***, 2012 WI App 97 at ¶ 26 (holding that generic testimony of plaintiff's expert about the asbestos content of thermal insulation products without reference to any particular defendant's product did not create a genuine issue as to causation, but supported only speculation.)

## CONCLUSION

For the foregoing reasons, Cessna respectfully requests that its motion for summary judgment be granted and that all claims against it be dismissed with prejudice and with costs, pursuant to Fed. R. Civ. 56(a), (c).

16692713v1 0911102

Dated this 15th day of January, 2015.

/s/ Brett B. Larsen
_____
Russell A. Klingaman
State Bar No. 1000676
Brett B. Larsen
State Bar No. 1064355
Attorneys for Defendant
Cessna Aircraft Company
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No.  414-276-6464
Fax No.  414-276-9220
E-mail Address(es):
rklingaman@hinshawlaw.com
blarsen@hinshawlaw.com

16692713v1 0911102