IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHIRLEY SPYCHALLA, as Special Administrator for the estate of LEONARD J. SPYCHALLA, Deceased,<br><br>  Plaintiff,<br><br>v.<br><br>AVCO CORP., et al.,<br><br>  Defendants. | Case No. 11-cv-00497<br><br>(*Remanded from E.D. Pa. Case No. 2:12-CV-60004, MDL 875*)<br><br>Hon. William C. Griesbach |

### DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Shirley Spychalla alleges that her decedent, Leonard Spychalla, was exposed to asbestos from products manufactured and distributed by numerous defendants, including Defendant General Electric Company ("GE"), and that he developed mesothelioma as a result. GE is entitled to summary judgment as to all of Plaintiff's claims against GE as Plaintiff has failed to produce evidence that GE supplied or manufactured any asbestos-containing products to which the decedent was exposed. Therefore, Plaintiff cannot prove that GE owed any duty to Mr. Spychalla for the harm alleged. Moreover, Plaintiff has failed to establish that any exposure to a GE product was a substantial factor in causing Mr. Spychalla's injury. Accordingly, and for the reasons set forth below, summary judgment should be granted in favor of GE.

### BACKGROUND

Plaintiff filed a civil action in Milwaukee County Circuit Court in May 2009 alleging her late husband, Leonard Spychalla, was exposed to asbestos during his decades-long career as a pilot and aircraft mechanic at various locations in Wisconsin, and that such exposure caused him to develop mesothelioma. Thereafter, Plaintiff voluntarily dismissed the state court action and

re-filed in the U.S. District Court for the Eastern District of Wisconsin in May 2011. *See* Compl., ECF No. 1. The case was transferred to MDL 875 in January 2012. *See* ECF Nos. 59-60.

With respect to GE, the only claims that remain concern Mr. Spychalla's exposure to allegedly asbestos-containing gaskets installed in CF 34 and CF 700 jet engines manufactured by GE and installed in Challenger 601 and Falcon 20 aircraft. July 23, 2014 Order, E.D. Pa. D.E. 333 (Ex. A) at 8 (Robreno, J.) (denying GE's motion for summary judgment with leave to refile). Mr. Spychalla allegedly performed maintenance on these aircraft at Kimberly-Clark Aviation ("K-C") in Wisconsin from 1978 until 1991. *See* Compl. ¶ 8, Ex. B, ECF No. 1. In addition to K-C, Mr. Spychalla also worked at various other locations, including several different airports in Wisconsin between 1958 and 1991—Plaintiff is not alleging exposure to GE products at any of these facilities. *Id.*

Plaintiff's allegations are based on Plaintiff's speculation that because she believes both the Challenger 601 and Falcon 20 aircraft were serviced and/or flown at K-C at some point during Mr. Spychalla's employment, he must have worked on the planes' engines. However, Plaintiff has no evidence, *inter alia*, that: (1) Mr. Spychalla actually worked on these aircraft; (2) even if he did work on them, the aircraft he worked on had GE engines; (3) even assuming he worked on a GE engine, it contained any asbestos-laden parts for which GE is responsible; or (4) any hypothetical work on a GE engine would have resulted in exposure to asbestos that could have been a substantial factor in causing his disease.

***Depositions and Declarations.*** Seven fact witnesses were deposed or submitted declarations. None of them can testify that Mr. Spychalla worked around any asbestos-containing products manufactured or sold by GE:

- Plaintiff was deposed on September 27, 2012. She testified that she does not have any information about the products that Mr. Spychalla worked with during his career. *See* Sept. 27, 2012 Deposition of Shirley Spychalla (Ex. B) at 16:21-17:4. Dean Spychalla, the decedent's son, was also deposed on November 19, 2012, but he offered no testimony whatsoever about GE or about Challenger or Falcon aircraft. *See* Nov. 19, 2012 Deposition of Dean Christopher Spychalla (Ex. C).

- Allan Bernette was deposed on June 15, 2012. He testified that he worked with Mr. Spychalla at Basler Flight Services in Oshkosh, Wisconsin from September 1968 to April 1970, *see* June 15, 2012 Deposition of Allan Bernette ("Bernette Dep.") (Ex. D) at 11:21-12:13, and at K-C Aviation at the Appleton Outagamie Airport from 1990 to 1995. *See id.* at 43:21-44:19. He testified that he could recall only one plane at K-C Aviation, a Challenger, that had GE engines in it. *See id.* at 74:18-75:4. Mr. Bernette cannot testify that Mr. Spychalla ever worked on the Challenger, *see id.* at 75:13-21, 76:2-10, and does not know if the GE engine in the Challenger had any asbestos-containing components, *see id.* at 78:9-15.

- Bradley Kososki was deposed on September 27, 2012. He met Mr. Spychalla when he started working at K-C Aviation in September 1986. *See* Sept. 27, 2012 Deposition of Bradley F. Kososki ("Kososki Dep.") (Ex. E) at 9:18-23. He testified that the only aircrafts with GE engines that he could recall Mr. Spychalla working on were Challenger 601 and Challenger 604 planes. *See id.* at 32:23-33:5. Mr. Kososki testified that the Challenger aircraft was introduced no more than five years prior to when he began working in 1986. *See id.* at 38:15-21. He does not know if the GE engines in the Challenger aircrafts contained asbestos. *See id.* at 38:9-14.

- Peter Sahli was deposed on October 3, 2012. He was employed with Mr. Spychalla at K-C Aviation, though he could not recall the time frame. *See* Oct. 3, 2012 Deposition of Peter Sahli ("Sahli Dep.") (Ex. F) at 5:22-6:20. He testified that Falcon jets at K-C had GE engines, *see id.* at 8:9-11, as did Challengers, *id.* at 8:22-23. He explained that inspection of a GE engine "would be mostly external visual check of the fan blades, the turbine blades." *Id.* at 20:11-15. Mr. Sahli never worked directly with Mr. Spychalla and has no specific recollection of Mr. Spychalla working on any GE engines. *See id.* at 58:18-59:9, 90:12-20.

- Peter Mulholland was deposed on October 3, 2012. He was employed with Mr. Spychalla at K-C Aviation. *See* Oct. 3, 2012 Deposition of Peter Mulholland ("Mulholland Dep.") (Ex. G) at 5:17-6:10. He never worked directly with Mr. Spychalla. *See id.* at 7:11-8:1. He does not know which planes Mr. Spychalla worked on. *See id.* at 16:9-14.

- Robert Casper was deposed on October 17, 2012. He worked with Mr. Spychalla at K-C Aviation, but testified that he recalled "very little" of Mr. Spychalla because they did not work on the same shift for the majority of the time while both worked at K-C. *See* Oct. 17, 2012 Deposition of Robert Casper ("Casper Dep.") (Ex. H) at 6:19-8:6. Mr. Casper could not "recall exactly what [Mr. Spychalla] did," *id.* at 10:7-9, and cannot testify about the type of work that Mr. Spychalla did on engines at K-C. *See id.* at 30:16-31:1.

***Experts.*** As none of Mr. Spychalla's coworkers could provide evidence that he worked with an asbestos-containing product for which GE is responsible, Plaintiff relies heavily on her experts to prove that Mr. Spychalla was exposed to asbestos for which GE is responsible. For the reasons set forth in GE's contemporaneously-filed *Daubert* motions, incorporated as if fully set forth herein, Plaintiff's experts' generic testimony lacks any foundation in the record, is inadmissible, and in any event, is insufficient to satisfy her burden of proof.

Plaintiff's Industrial Hygiene Expert Steven Paskal. Plaintiff offers Mr. Paskal's opinion that "[i]t is likely that Mr. Spychalla encountered a variety of exposures" while "handling asbestos-containing molded or compressed articles such as brake pad/shoes and gaskets." March 27, 2011 Expert Report of Steven Paskal ("Paskal Rep.") (Ex. I) at 3. He concludes that such asbestos exposures "would be at levels that were likely hundreds to thousands of times higher than ambient asbestos levels" and would have "significantly increased Mr. Spychalla's risk of mesothelial cancer." *Id.* at 4. However, Mr. Paskal's expert report does not so much as mention GE, nor does it consider Mr. Spychalla's work at K-C, the only location where he is alleged to have worked around GE jet engines. *See generally id.* Crucially, Mr. Paskal admitted that his report *does not consider Mr. Spychalla's exposure to jet engines whatsoever.* Dec. 20, 2012 Deposition of Steven Paskal ("Paskal Dep.") (Ex. J) at 44:20-45:10 (agreeing he only considered Mr. Spychalla's work with propeller-driven airplanes).

Plaintiff's Aircraft Maintenance Experts Michael Plavchan and Rodney Doss. Plaintiff also offers the testimony of Messrs. Plavchan and Doss to prove that gaskets installed in jet engines contained asbestos to which Mr. Spychalla would have been exposed. Mr. Plavchan opines that the GE CF 700 engine used in Challenger 601 jets and the GE CF 700 engine used in Falcon 20 jets "utilized asbestos gaskets." March 19, 2013 Expert Report of Michael Plavchan

4

("Plavchan Rep.") (Ex. K) at 8.  He further opines that "[m]echanics doing work on these engines would be exposed to asbestos through contact with these engine gaskets." *Id.*  Likewise, Plaintiff's other aircraft maintenance expert, Rodney Doss, opined that Mr. Spychalla may have performed "customary maintenance, inspections, repairs and/or replacement of products containing asbestos" and there "would have been asbestos dust released" when performing a variety of maintenance tasks on a wide variety of parts of an aircraft.  March 20, 2013 Aviation Maintenance Expert Report of Rodney L. Doss ("Doss Rep.") (Ex. L) at 2.  Mr. Doss' report does not mention GE at all, and he conceded at his deposition that he did not "have an opinion one way or another as to whether Mr. Spychalla was exposed to asbestos from a GE turbine or jet engine."  May 17, 2013 Deposition of Rodney L. Doss ("Doss Dep.") (Ex. M) at 240:3-8.

Neither expert had any information about the actual aircraft Mr. Spychalla worked on, including what parts or engines they contained.  *See, e.g.*, April 22, 2013 Deposition of Michael Plavchan ("Plavchan Dep.") (Ex. N) at 100:12-101:1; Doss Dep. (Ex. M) at 167:6-8, 168:10-14, 239:10-18, 254:8-12.  They had no information concerning the actual mechanical work that Mr. Spychalla did, other than that Mr. Spychalla was a mechanic at K-C Aviation.  Plavchan Dep. (Ex. N) at 107:8-14, 134:13-23, 135:22-136:2, 168:22-169:7, 176:22-177:16; Doss Dep. (Ex. M) at 31:15-32:7, 241:14-242:17.  Neither expert could say who manufactured any allegedly asbestos-containing gaskets in any GE engines Mr. Spychalla allegedly worked on or around.  Plavchan Dep. (Ex. N) at 101:25-102:18, 190:15-191:3, 193:8-25; Doss Dep. (Ex. M) at 254:5-7.  Accordingly, neither expert could testify that Mr. Spychalla ever worked with a GE asbestos-containing product.  Plavchan Dep. (Ex. N) at 98:8-23, 181:18-185:1; Doss Dep. (Ex. M) at 240:3-8.

Plaintiff's Medical Causation Experts. Plaintiff also offers the opinions of Dr. Henry Anderson and Dr. Carlos Bedrossian in order to establish specific causation. Both experts opine that "cumulative" occupational exposure to asbestos caused Mr. Spychalla to develop malignant pleural mesothelioma—but the experts' purported case-specific opinions are neither product nor defendant specific. *See generally* March 30, 2011 Report of Henry A. Anderson, M.D. ("Anderson Rep.") (Ex. O); March 28, 2011 Report of Carlos Bedrossian, M.D. ("Bedrossian Rep.") (Ex. P). As they cannot say whether Mr. Spychalla was exposed to asbestos from any GE products, much less the extent of any such alleged exposure, Drs. Anderson and Bedrossian espouse the "every exposure" theory, opining that every fiber of exposure contributes to an overall risk of injury. Bedrossian Rep. (Ex. P) at 6 (the "*total and cumulative* exposure to asbestos, from *any and all* products, containing *any and all* fiber types, was a significant contributing factor to his death") (emphasis added); Anderson Rep. (Ex. O) at 3 ("*All* exposures to asbestos fibers are considered to contribute to the disease process.") (emphasis added).[1] Likewise, Plaintiff offers an entirely generic opinion of Arnold Brody, Ph.D. in support of the "every exposure" theory, even though he had no information at all about Mr. Spychalla or GE. *See* October 14, 2011 Expert Report of Arnold Brody, Ph.D. (Ex. Q).

After the close of discovery in the MDL, GE filed a motion for summary judgment, which was denied with leave to refile in this Court upon remand. July 23, 2014 Order, E.D. Pa.

---

[1] Drs. Anderson and Bedrossian have explained their "every exposure" theory numerous times through deposition testimony. *See, e.g.*, August 18, 2010 Deposition of Henry A. Anderson, M.D., *Jurglanis v. Brake Supply Co., et al.*, No. 09-cv-001160 (Ex. R) at 108:12-109:1-14 ("All you can say is the cumulative exposure caused his disease."); Sept. 25, 2012 Deposition of Henry Anderson, M.D., *Hass v. Albany Internat'l, et al.*, E.D. Pa. No. 2:09-cv-60298 (Ex. S to Mot.) at 70:21-71:25; January 5, 2012 Deposition of Carlos Bedrossian, M.D., *Gehrt v. ACandS, Inc., et al.*, E.D. Pa. No. 2:08-cv-92066-ER (Ex. T) at 146:12-147:2 ("any and every exposure to asbestos" is a contributing factor to cancer); February 15, 2012 Deposition of Carlos Bedrossian, M.D., *Gehrt v. ACandS, Inc., et al.*, E.D. Pa. No. 2:08-cv-92066-ER (Ex. U) at 45:5-10.) (explaining he does not care about the extent of a plaintiff's exposure to a particular defendant's product; rather "one single fiber from one single product" counts).

D.E. 333 ("MDL Summ. J. Order") (Ex. A) at 9 (Robreno, J.) (denying GE's motion for summary judgment with leave to refile). Specifically, the MDL court explained:

> Importantly, however, ***there is no evidence*** that the gaskets from which asbestos exposure may have occurred were manufactured or supplied by GE. This is because ***there is no evidence*** that Decedent was exposed to respirable asbestos dust from a gasket original to the GE engines or that any of the replacement gaskets with which Decedent worked were manufactured or supplied by GE. Defendant GE is liable for Decedent's alleged exposures only if Wisconsin law does not recognize the so-called 'bare metal defense.'"

*Id.* (emphasis added). The court concluded that "the transferor court sitting in Wisconsin is better situated to address whether Wisconsin law recognized the defense." *Id.* Accordingly, the case was remanded to this Court on November 3, 2014 pursuant to the Panel on Multidistrict Litigation's Conditional Remand Order. *See* ECF No. 61.

## ARGUMENT

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Even on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*. Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

7

475 U.S. 574, 586-87 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

I. **PLAINTIFF'S CLAIMS AGAINST GE FAIL BECAUSE GE IS NOT LEGALLY RESPONSIBLE FOR ANY ASBESTOS-CONTAINING PRODUCTS IT NEITHER MANUFACTURED NOR SUPPLIED**

Even if Plaintiff could produce evidence that Mr. Spychalla worked with or around an asbestos-containing component in a GE jet engine—which, for the reasons set forth *infra*, she cannot do—summary judgment is still proper as GE is not legally responsible for asbestos-containing products it neither manufactured nor supplied. Judge Robreno has already held that (1) "there is no evidence that the gaskets from which asbestos exposure may have occurred were manufactured or supplied by GE"; (2) "there is no evidence that Decedent was exposed to respirable asbestos dust from a gasket original to the GE engines"; and (3) "there is no evidence . . . that any of the replacement gaskets with which Decedent worked were manufactured or supplied by GE." MDL Summ. J. Order (Ex. A) at 9. The question of whether one owes a legal duty regarding the use of a product in Wisconsin is a question of law for the court. *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 307, 552 N.W.2d 632 (Wis. Ct. App. 1996).

Thus, although GE is the manufacturer of the CF 34 and CF 700 engines, it had no control over—and no duty to warn regarding—common "expendable parts" such as gaskets that were later incorporated as replacement parts. *See* Plavchan Dep. (Ex. N) at 191:4-193:7. Plaintiff has produced no evidence that GE knew or had any ability to control the type of replacement gaskets that were used in conjunction with its engines at the time Mr. Spychalla would have worked with them, to the extent he theoretically worked with a GE engine at all. *See*

MDL Summ. J. Order at 8-9; *see also, e.g.*, Plavchan Dep. (Ex. N) at 134:13-23, 168:22-169:7, 176:22-177:16; Doss Dep. (Ex. M) at 31:15-32:7, 167:6-8, 168:10-14, 239:10-18, 240:1-241:3, 241:14-242:17, 254:8-12.

None of Plaintiff's fact witnesses provided any evidence that Mr. Spychalla worked with or around any allegedly asbestos-containing gaskets that were supplied or manufactured by GE.[2] *See, e.g.*, Bernette Dep. (Ex. D) at 78:9-15; Kososki Dep. (Ex. E) at 38:9-14; Sahli Dep. (Ex. F) at 58:18-59:9, 90:12-20. Plaintiff's industrial hygiene expert, Steven Paskal, had no information about jet aircraft components whatsoever. Paskal Dep. (Ex. J) at 44:20-45:10. Both of Plaintiff's aviation maintenance experts explained that they do not know whether GE manufactured or supplied any gaskets typically used in the jet aircraft engines at issue—whether asbestos containing or not. *See* Plavchan Dep. (Ex. N) at 193:8-25; Doss Dep. (Ex. M) at 254:5-7. Rather, Plaintiff's experts testified that "expendable" replacement parts such as gaskets typically were not purchased from GE, but rather from third-party vendors, which generally had cheaper prices. Plavchan Dep. (Ex. N) at 191:4-193:7.

In order to know what parts were used in a particular aircraft, one would need to know the year of manufacture, the model number, and the serial number on an aircraft. Plavchan Dep. (Ex. N) at 101:25-102:18, 190:15-191:3. Mr. Plavchan explained that there is no way to determine whether a gasket was supplied by GE without reviewing work orders, which he has not done. *See* Plavchan Dep. (Ex. N) at 193:8-25; *see also id.* at 217:25-218:25 (testifying that

---

[2] Plaintiff has also failed to produce sufficient evidence that the two GE engines purportedly at issue here—the Falcon 20 jet's CF 700 and the Challenger 601 jet's CF 34—contained asbestos parts at all, regardless of who supplied them. Plavchan Dep. (Ex. N) at 293:24-295:4 (CF 34 engines did not contain asbestos at all); *id.* at 97:19-98:23 (failed to produce reliance materials indicating asbestos content of CF 700 engines); Doss Dep. (Ex. M) at 250:18-21 (could not say what, if any, components or parts on a CF 34 engine contain asbestos); *id.* at 254:5-12 (CF 700 engines may have contained asbestos).

he cannot tell if the original parts would have been on any given airplane that Mr. Spychalla worked on, and likely parts would be changed out by the time an aircraft was 20 or 30 years old); Doss Dep. (Ex. M) at 218:21-25, 230:18-231:25 (testifying that "consumable portions" of an airplane such as gaskets would have been changed "several times" over the course of an airplane's life). Without such information, any testimony with regard to what specific parts may have been installed in an aircraft that Mr. Spychalla worked on would be speculative. *Id.* at 102:19:23. Plaintiff has not produced any such evidence. *Id.* at 100:12-101:5-24.

Many courts have reached the conclusion that there is no duty to warn of dangers associated with replacement parts, where the manufacturer did not design or manufacture the replacement parts, even if the replacement part is virtually the same as the original part. *See, e.g., Baughman v. Gen. Motors Corp.*, 780 F. 2d 1131, 1133 (4th Cir. 1986) (manufacturer had no duty to warn of possible danger posed by replacement parts that it did not design, manufacture, or place into the stream of commerce; a "[manufacturer] cannot be charged with testing and warning against any myriad of replacement parts supplied by any number of manufacturers"); *Ford Motor Co. v. Wood*, 119 Md. App. 1, 703 A. 2d 1315 (1998) (where there was no evidence that Ford manufactured or placed into the stream of commerce the asbestos-containing replacement parts at issue, Ford could not be held liable for failure to warn of dangers of asbestos); *Exxon Shipping Co. v. Pac. Res., Inc.*, 789 F. Supp. 1521, 1526-27 (D. Haw. 1991). Indeed, the majority view nationwide is that a manufacturer of equipment owes no legal duty with respect to third parties' asbestos-containing materials that are used with the manufacturer's equipment post-sale. *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498-99 (Wash. 2008) ("Our decision . . . is in accord with the majority rule nationwide: a 'manufacturer's duty to warn is restricted to warnings based on the characteristics of the manufacturer's own products'; '[t]he

10

law generally does not require a manufacturer to study and analyze the products of others and warn users of the risks of those products.'") (citing 3 AM. LAW OF PRODS. LIAB. 3d § 32:9 (2004) and collecting cases); *see also, e.g.*, *O'Neil v. Crane Co.*, 266 P.3d 987, 995 (Cal. 2012); *Taylor v. Elliott Turbomachinery Co.*, 90 Cal. Rptr. 3d 414 (Ct. App. 2009); *Simonetta v. Viad Corp.*, 197 P. 3d 127, 132 (Wash. 2008).

Wisconsin Courts have embraced the principle that one entity is not liable for another entity's defective product simply because the allegedly defective product was used with or near the former entity's product. *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 685-86, 280 N.W. 2d 226 (1979) (manufacturer of conveyor system had no duty to warn of dangers allegedly associated with electronic control system incorporated into the system); *Schreiner v. Weiser Concrete Prods.*, 2006 WI App 138, 294 Wis. 2d 832, 720 N.W. 2d 525 (manufacturer of sheeting not liable for alleged defects in materials used to manufacture a silo in which sheeting was used in an allegedly dangerous manner); *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 307-308, 552 N.W. 2d 632 (Wis. Ct. App. 1996) (manufacturer of a foot switch incorporated into a punch press by the press manufacturer had no duty to warn users of the press because it was not involved in determining how the foot switch would be incorporated).

To date, the Wisconsin Court of Appeals has not expressly adopted the so-called "bare metal" defense doctrine. But, several Wisconsin trial courts have recently cited to the doctrine favorably in holding that a manufacturer is not liable for the asbestos-containing parts of another manufacturer's product. *See* Hrg. Tr. from Mot. for Sum. J. at 58-59, 72-74, *Viola v. A.O. Smith Corp.,* No. 09-CV-9078 (Milwaukee Cty. Cir. Ct. Dec. 14, 2012) (Ex. V) (granting summary judgment to the manufacturer of a Kewaunee boiler, holding the boiler was not a defective component and there was no evidence that the manufacturer substantially participated in the

integration or installation of the asbestos into or onto the boiler); *see also* Decision & Order at 4-6, *Viola v. A.O. Smith Corp.*, No. 09-CV-9078 (Milw. Cty. Cir. Ct. Dec. 22, 2014) (Ex. W) (granting summary judgment to the manufacturer of a Trane boiler holding that the boiler was not a defective component and there was no evidence that the manufacturer substantially participated in the integration or installation of the asbestos into or onto the boiler; citing favorably to *Braaten* and *Baughman* bare metal cases (*supra*)); Hrg. Tr. from Mot. for Sum. J. at 25-28, *Sawicki v. Allegheny Technologies, Inc.*, No. 10-CV-20714 (Milw. Cty. Cir. Ct. Aug. 2, 2013) (Ex. X) (granting summary judgment to three equipment manufacturers where there was no evidence that they supplied or manufactured the asbestos containing gaskets or packing material allegedly used with their equipment; holding that *O'Neil* and *Braaten* (*supra*), are "the most persuasive" and "appear to set forth a policy that the court of appeals…would determine to be a natural extension of *Schreiner* and *Pomplun*," which are the Wisconsin appellate decisions that hold that a product manufacturer should not be held liable for a failure to warn of a danger of another manufacturer's product).

There is no evidence that Mr. Spychalla was exposed to asbestos-containing products, parts or components originally supplied or manufactured by GE. There is also no evidence that GE substantially participated in the integration of any asbestos-containing product into GE engines. Thus, regardless of whether Plaintiff has produced evidence that Mr. Spychalla worked around GE engines containing asbestos at all, she can only maintain that Mr. Spychalla was exposed to asbestos-containing products that were used in connection with a GE product but which were supplied or manufactured by others. Wisconsin law is consistent with other jurisdictions and the majority view that Plaintiff's claims cannot be based on alleged exposure to

asbestos-containing products used *with* a GE jet engine, but which were manufactured, distributed, supplied, or sold by other entities.

## II.   GE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NO EVIDENCE OF CAUSATION.

Causation is an essential element of plaintiff's cause of action, and to recover under Wisconsin law she bears the burden of proving that the decedent was exposed to the defendant's asbestos products. *Zielinski v. A.P. Green Indust., Inc.*, 2003 WI App. 85 ¶ 16, 263 Wis. 2d 294, 661 N.W.2d 491. As set forth above, Plaintiff has no evidence that Mr. Spychalla was exposed to an asbestos-containing gasket supplied by GE. At best, she speculates to support her allegation that Mr. Spychalla worked *around*, much less was actually *exposed to*, asbestos from any GE product. A plaintiff must establish more than a "mere possibility" that a defendant's particular product caused plaintiff's injury. *Id.* "'[W]hen the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" *Id.* (quoting *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 458-59, 460, 267 N.W.2d 652 (1978)). Plaintiff cannot carry her burden of proof on legal causation here.

*First*, Plaintiff has little evidence that Mr. Spychalla ever worked with or around an aircraft containing a GE engine. Only one witness, Bradley Kososki, testified that Mr. Spychalla worked on Challenger 601 aircraft. *Compare* Kososki Dep. (Ex. E) at 32:23-33:5 (the only aircrafts with GE engines that he could recall Mr. Spychalla working on were Challenger 601 and Challenger 604 planes) *with* Bernette Dep. (Ex. D) at 58:21-24 (could not recall any planes at Basler that were equipped with GE engines), 74:18-75:4 (could recall only one plane at K-C, a Challenger, that had GE engines in it), 75:13-21, 76:2-10 (cannot testify that Mr. Spychalla ever worked on the Challenger) *and* Sahli Dep. (Ex. F) at 8:9-11, 8:22-23 (Falcon jets at K-C had GE

engines, as did Challengers), 58:18-59:9, 90:12-20 (never worked directly with Mr. Spychalla and has no specific recollection of Mr. Spychalla working on any GE engines). Mr. Kososki had no idea whether Mr. Spychalla worked on any CF 700 engines and *no witness* — neither Mr. Kososki nor plaintiff's aviation maintenance expert — testified that the CF 34 engines Mr. Spychalla allegedly worked on contained asbestos. *See* Kososki Dep. (Ex. E) at 38:9-14 (testifying he was not aware of any asbestos in CF 34 engines, nor had anyone ever told him the engines contained asbestos); Plavchan Dep. (Ex. N) at 293:24-295:4.

Similarly, though Peter Sahli testified that Falcon jets at K-C had GE engines, *see* Sahli Dep. (Ex. F) at 8:9-11, he never worked directly with Mr. Spychalla and has no specific recollection of Mr. Spychalla working on any GE engines. *See id.* at 58:18-59:9, 90:12-20. Both Messrs. Plavchan and Doss explained that they do not know whether GE manufactured or supplied the allegedly asbestos-containing parts in the CF 700 engines installed in some Falcon aircrafts. *See* Plavchan Dep. (Ex. N) at 193:8-25; Doss Dep. (Ex. M) at 254:5-7. More importantly—and consistent with the facts in this case—both Messrs. Plavchan and Doss admit that there is no evidence that Mr. Spychalla ever worked on any GE engines installed in Falcon aircrafts. *See* Plavchan Dep. (Ex. N) at 181:18-185:1; Doss Dep. (Ex. M) at 254:8-12. They further explained that even if there was evidence that Mr. Spychalla worked around the jets at issue here, they all would not necessarily have contained GE engines. Doss Dep. (Ex. M) at 255:9-14, 256:18-20; *see also* Plavchan Dep. (Ex. N) at 169:19-170:5 (stating that although there were Falcon 20 jets at K-C aviation, and therefore, he assumed that Mr. Spychalla worked on them, not all of the Falcon 20s had GE engines).

***Second***, even if Plaintiff were able to establish that Mr. Spychalla worked with or around a GE engine, she still cannot sustain her burden, as there is no evidence that any alleged work

14

performed by Mr. Spychalla or his coworkers would have involved asbestos-containing components. Moreover, she has no evidence that any such work involved the manipulation of asbestos-containing component parts. Consequently, it would be speculative to conclude, without evidence, that the GE products at issue contained asbestos to which Mr. Spychalla would have been exposed. Such speculation is inadmissible and insufficient to defeat a motion for summary judgment. *See*, *e.g.*, *Merco Distrib. Corp. v. Comm. Police Alarm Co.*, 267 N.W.2d 652, 655 (Wis. 1978) ("it is impermissible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities'") (quoting *Schwalbach v. Antigo Elec. & Gas, Inc.*, 135 N.W.2d 263, 265 (Wis. 1965)).

For instance, Mr. Doss admitted at his deposition that he did not "have an opinion one way or another as to whether Mr. Spychalla was exposed to asbestos from a GE turbine or jet engine." *Id.* at 240:3-8. This is unsurprising as Mr. Doss had absolutely no information whatsoever that Mr. Spychalla ever worked on an aircraft that utilized a GE engine, much less any evidence that Mr. Spychalla performed any work on any GE jet engine. *Id.* at 31:15-32:7, 167:6-8, 168:10-14, 239:10-18, 254:8-12. 240:1-241:3-17. Likewise, Mr. Plavchan admitted that he has "no information whatsoever on when the aircraft [that Mr. Spychalla worked on] was manufactured," *see* Deposition of Michael Plavchan (Ex. N) at 100:12-18, no information on the specific model numbers of the aircraft that Mr. Spychalla worked on, *see id.* at 100:23-101:1, and no information concerning the actual mechanical work that Mr. Spychalla did, other than that Mr. Spychalla was a mechanic at K-C Aviation. *See id.* at 107:8-14. He therefore could have no basis to testify as to any supposed exposure to asbestos Mr. Spychalla may have experienced at K-C. *See also id.* at 181:18-185:1

Since Mr. Plavchan has not seen Mr. Spychalla's training records or time cards, he admitted that he cannot testify that Mr. Spychalla ever worked on any GE engines at all. *See id.* at 134:13-23 (admitting he had no time cards and had no "information at all concerning what Mr. Spychalla actually did at KC Aviation"), 168:22-169:7 (admitting that he had no documents showing what training Mr. Spychalla received, and therefore, there was no way to tell what work he may have done on a particular aircraft), 176:22-177:16 (stating the only way to tell what type of work Mr. Spychalla did was to see work records, which he did not have).

At most, plaintiff's so-called evidence suggests the *mere possibility* that Mr. Spychalla regularly worked around GE products, that any of these products actually contained asbestos, and that Mr. Spychalla actually inhaled any asbestos fibers from such alleged products. Plaintiff lacks the necessary asbestos exposure evidence necessary to create a reasonable inference that Mr. Spychalla's injury was caused by GE as required under Wisconsin law. *See Zielinski*, 2003 WI App 85 at ¶ 16. It is not GE's burden to prove a negative (*i.e.*, that Mr. Spychalla was *not* sufficiently exposed to an asbestos-containing GE product). Rather, to overcome summary judgment, plaintiff must present admissible evidence that Mr. Spychalla was exposed to a GE product containing asbestos *and* that this alleged exposure was a substantial factor in causing his disease. Plaintiff has failed to present even the "mere existence of a scintilla of evidence" in support of her claims, and accordingly, summary judgment must be granted in GE's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. ALTERNATIVELY, ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF ADMISSIBLE EXPERT TESTIMONY ESTABLISHING MEDICAL CAUSATION.

GE is entitled to summary judgment for an additional reason: plaintiff has no admissible expert testimony establishing medical causation. For the reasons set forth in GE's contemporaneously-filed Motion To Exclude Testimony of Plaintiff's Medical Causation

Experts, incorporated as if fully set forth herein, the causation opinions of plaintiff's only case-specific medical causation experts, Drs. Henry Anderson and Carlos Bedrossian, must be excluded because they do not withstand *Daubert* scrutiny. Without expert testimony drawing a causal connection between the decedent's supposed exposures to asbestos from GE products and his injuries, plaintiff's causation claims fail.

## CONCLUSION

For the foregoing reasons, General Electric Company requests that this Court enter summary judgment in its favor on all of plaintiff's claims. GE further requests that the Court direct entry of final judgment in its favor pursuant to Fed. R. Civ. P. 54(b). A proposed order is attached hereto as Exhibit Y.

Dated:  January 15, 2015                                    Respectfully submitted,

                                                                                   GENERAL ELECTRIC COMPANY

                                                                           By:  */s/ Timothy E. Kapshandy*

                                                              Timothy E. Kapshandy
                                                              SIDLEY AUSTIN LLP
                                                              One South Dearborn Street
                                                               Chicago, Illinois  60603
                                                              Telephone:  (312) 853-7000
                                                              Facsimile:  (312) 853-7036
                                                              tkapshandy@sidley.com

                                                               David E. Frank
                                                               Nora E. Gierke
                                                               GIERKE FRANK LLC
                                                               7604 Harwood Avenue
                                                               Suite 203
                                                               Wauwatosa, WI 53213
                                                              Telephone:  (414) 395-4600
                                                              Facsimile:  (414) 921-4108
                                                              dfrank@gierkefrank.com
                                                              ngierke@gierkefrank.com

                                                              *Attorneys for Defendant General Electric Company*

**CERTIFICATE OF SERVICE**

        I hereby certify that on this 15th day of January, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                        /s/ Timothy E. Kapshandy