## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHIRLEY SPYCHALLA, as Special Administrator for the estate of LEONARD J. SPYCHALLA, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> AVCO CORP., et al., <br><br> Defendants. | Case No. 11-cv-00497 <br><br> (*Remanded from E.D. Pa. Case No. 2:12-CV-60004, MDL 875*) <br><br> Hon. William C. Griesbach |

**DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S MEDICAL CAUSATION EXPERTS AND MEMORANDUM OF LAW IN SUPPORT**

Defendant General Electric Company ("GE") moves to exclude the testimony of

Plaintiff's medical causation experts, Henry Anderson, M.D. and Carlos Bedrossian, M.D.

("Plaintiff's experts"), as their expert opinions fail to meet the requirements for admissibility

under Rules 702 and 703 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons that follow, GE's motion should be

granted.

**MEMORANDUM OF LAW**

Plaintiff Shirley Spychalla alleges that the decedent, Leonard Spychalla, was exposed to

asbestos from products manufactured and distributed by numerous defendants, including

Defendant General Electric Company ("GE"), and that he developed mesothelioma and died as a

result. With respect to GE, the only claims that remain concern Mr. Spychalla's exposure to

allegedly asbestos-containing gaskets installed in CF 34 and CF 700 jet engines manufactured by

GE and installed in Challenger 601 and Falcon 20 aircraft, respectively. Mr. Spychalla allegedly

performed maintenance on these aircraft at Kimberly-Clark Aviation ("K-C") in Wisconsin from 1978 until 1991. *See generally* July 21, 2014 Order Granting in Part and Denying In Part GE's Motion For Summary Judgment, E.D. Pa. ECF No. 248. In addition to K-C, Mr. Spychalla also worked at various other locations, including several different airports in Wisconsin between 1958 and 1991—Plaintiff is not alleging exposure to GE products at any of these facilities.

The specific causation opinions of Drs. Anderson and Bedrossian—*i.e.*, that "cumulative" occupational exposure to asbestos caused Mr. Spychalla to develop malignant pleural mesothelioma—are neither product nor defendant specific. *See* March 30, 2011 Report of Henry A. Anderson, M.D. ("Anderson Rep.") (Ex. A) at 4; March 28, 2011 Report of Carlos Bedrossian, M.D. ("Bedrossian Rep.") (Ex. B) at 6. Consequently, Plaintiff's experts have no idea whether Mr. Spychalla was even exposed to asbestos from any GE products, much less the extent of any such alleged exposure. Instead, Drs. Anderson and Bedrossian conveniently espouse the "every exposure" theory, which discards specific causation and relies instead upon "cumulative" potential exposure to asbestos without regard to the extent to which any particular defendant's product contributed to allegedly causing the decedent's disease. Bedrossian Rep. (Ex. B) at 6 (the "*total and cumulative* exposure to asbestos, from *any and all* products, containing *any and all* fiber types, was a significant contributing factor to his death") (emphasis added); Anderson Rep. (Ex. A) at 3 ("*All* exposures to asbestos fibers are considered to contribute to the disease process.") (emphasis added); August 18, 2010 Deposition of Henry A. Anderson, M.D., *Jurglanis v. Brake Supply Co., et al.*, No. 09-cv-001160 ("*Jurglanis* Anderson Dep.") (Ex. C) at 108:12-109:1-14 ("All you can say is the cumulative exposure caused his disease."). As a result, neither expert attempted to assess the extent of Mr. Spychalla's exposure to any particular defendant's product because, in their view, every fiber of exposure contributes

2

to the overall risk of injury. Sept. 25, 2012 Deposition of Henry Anderson, M.D., *Hass v. Albany Internat'l, et al.*, E.D. Pa. No. 2:09-cv-60298 ("*Hass* Anderson Dep.") (Ex. D) at 70:21-71:25 (claiming that "[i]t's kind of the old what straw broke the camel's back"); January 5, 2012 Deposition of Carlos Bedrossian, M.D., *Gehrt v. ACandS, Inc., et al.*, E.D. Pa. No. 2:08-cv-92066-ER ("Bedrossian Dep. Vol. I") (Ex. E) at 146:12-147:2 ("any and every exposure to asbestos" is a contributing factor to cancer).

Plaintiff's experts attempt to espouse an "every exposure" theory is unreliable and unscientific. Courts nationwide have excluded the theory, including at least one district court within the Seventh Circuit. *Krik v. Crane Co.*, No. 10-cv-7435, 2014 WL 7330901, ___F. Supp. 3d ___ (N.D. Ill. Dec. 22, 2014) (excluding opinion that "a single exposure to asbestos is enough and every additional exposure contributed as well" and further holding the "'Any Exposure' theory also is inadmissible given [the plaintiff's] experts' wholesale failure to base their opinions on facts specific to this case").[1] For the reasons set forth below, this Court must exercise its gatekeeping duty and exclude Drs. Anderson's and Bedrossian's "every exposure" theory in its entirety. Plaintiff cannot meet her burden of proving specific causation without medical causation testimony. Accordingly, Plaintiff's experts should not only be precluded from providing any opinions in this case, but their exclusion is fatal to Plaintiff's claims.

## ARGUMENT

The Supreme Court has made clear that scientific testimony is admissible under Rule 702 only if it is based on "scientific knowledge" that is "derived by the scientific method":

> Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

---

[1] Pursuant to Civil L.R. 7(j), all unreported decisions cited herein are attached as Exhibit J.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).  In other words, the district court must act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589.

As the proponent of her experts' opinions, Plaintiff bears the burden of establishing their admissibility.  *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).  Rule 702 allows the admission of testimony by an expert with the requisite "knowledge, skill, experience, training, or education" to help the trier of fact "understand the evidence or determine a fact in issue."  Fed. R. Evid. 702.  Experts are only permitted to testify when their testimony is "(1) based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*  In addition, "Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions."  *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).  Even if an expert's methodology in general is acceptable, the expert must demonstrate "the reasonableness" of his application of that methodology in a particular case.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153-54 (1999).  Plaintiff cannot carry this burden with respect to Drs. Anderson and Bedrossian.[2]

---

[2] The Court has scheduled a pretrial hearing for March 26, 2015.  As the admissibility of the testimony of Drs. Anderson and Bedrossian would critically affect the trial, this pretrial hearing will avoid the costly result of needlessly proceeding to trial.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012) ("An erroneous *Daubert* ruling excluding non-critical expert testimony would result, at worst, in the exclusion of expert testimony that did not matter.  Failure to conduct such an analysis when necessary, however, would mean that the unreliable testimony remains in the record, a result that could easily lead to reversal on appeal."); *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (explaining courts must squarely resolve "tough" questions, "if necessary by holding evidentiary hearings and choosing between competing perspectives"); *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) *cert. denied,* 13-1252, 2014 WL 1496421 (U.S. Oct. 6, 2014) (finding in an asbestos case that the erroneous admission of unreliable expert testimony was reversible error, and explaining that "[j]ust as the district court cannot abdicate its role as gatekeeper, so too must it avoid delegating that role to the jury").  Drs. Anderson and Bedrossian are plaintiff's sole medical causation experts, and without their testimony, plaintiff cannot prove an essential element of her case.  Accordingly, at a minimum, this hearing is essential to determine whether Drs. Anderson and Bedrossian can be permitted to testify at trial, and if not, whether a trial is necessary at all.

## I. DRS. ANDERSON AND BEDROSSIAN SHOULD NOT BE ALLOWED TO OFFER ANY CAUSATION OPINIONS

### A. The Case-Specific Opinions of Drs. Anderson and Bedrossian Fail to Consider Any GE Product At Issue In This Case.

The only remaining issue in this case with regard to GE concerns Mr. Spychalla's alleged

exposure to allegedly asbestos-containing gaskets installed in CF 20 and CF 700 jet engines at

K-C. No evidence exists that the gaskets alleged to have been handled by Mr. Spychalla were

actually manufactured or supplied by GE. Rather, Plaintiff's claims against GE solely rest on the

allegation that GE manufactured these particular engines. *See* July 23, 2014 Order, E.D. Pa.

D.E. 333 (Ex. F) (denying GE's motion for summary judgment with leave to refile).[3]

Plaintiff's experts' reports reveal that they only reviewed a small fraction of the evidence

in this case, and neither report makes any mention of GE whatsoever. *See* Anderson Rep. (Ex.

A) at 1 (stating that he reviewed selected medical records, Mr. Spychalla's death certificate, a

summary of employment history provided by Plaintiff's counsel, and the expert report of

Plaintiff's industrial hygiene expert, Steven Paskal); Bedrossian Rep. (Ex. B) at 1 (stating he

reviewed a counsel-supplied work history, medical records, and pathology materials). Both Drs.

Anderson and Bedrossian failed to review *any* deposition testimony or case-specific discovery

*whatsoever*. And while Dr. Anderson purportedly relied on the industrial hygiene report of

Steven Paskal, this report only contemplated Mr. Spychalla's work at Basler Flight Service—

making neither mention of plaintiff's alleged maintenance activities at K-C nor GE whatsoever.

The reports of Drs. Anderson and Bedrossian express no basis by which they could possibly

determine exposure to a GE product was a substantial factor in causing the decedent's disease

---

[3] The Court denied summary judgment in favor of GE "with leave to refile in the transferor court," in order to determine whether Wisconsin law recognizes "the so-called 'bare metal defense'" since Plaintiff alleges "causation with respect to gaskets used in connection with GE engines . . . which were neither manufactured nor supplied by GE." July 23, 2014 Order, E.D. Pa. D.E. 333 at 9.

because they did not even attempt to speculate as to Mr. Spychalla's exposure to such products. Consequently, Drs. Anderson and Bedrossian cannot be permitted to opine that exposure to gaskets installed in GE engines caused Mr. Spychalla's mesothelioma as they did not consider such products in their reports.

**B.      Drs. Anderson and Bedrossian Impermissibly Conflate Risk With Causation.**

The "every exposure" theory addresses *risk*, not *causation*. *See, e.g.*, *Jurglanis* Anderson Dep. (Ex. C) at 46:16-25, 52:1-25, 54:3-20,  57:9-17, 58:20-59:5, 64:18-67:6; *see also Hass* Anderson Dep. (Ex. D) at 136:12-137:11.  The question in this litigation, however, is not whether Mr. Spychalla's exposure to asbestos from a defendant's product increased his *risk* of injury.  Rather, Plaintiff must show that his exposure to asbestos from a GE product was "a *cause* (a substantial factor) of the plaintiff's injuries or damages." *Zielinski v. A.P. Green Indus., Inc.*, 263 Wis.2d 294, 661 N.W.2d 491, 494 (Wis. Ct. App. 2003) (emphasis added).

For instance, even though Dr. Anderson has agreed that *risk* cannot be conflated with *causation*, *see, e.g.*, *Hass* Anderson Dep. (Ex. D) at 137:12-18, he makes this exact mistake when offering his "causation" opinions.  According to Dr. Anderson, once an individual develops an asbestos-related disease, every exposure to asbestos is a cause of the disease:

> I would say that all of the work that he described . . . contributed to his exposure.
> . . . I can't single out, ooh, if he hadn't have done this he wouldn't have developed
> disease, for instance.  He spent 40 years there doing all sorts of different things,
> and had ample opportunity to repeatedly come into contact with asbestos or be in
> environments where asbestos was in the air.

*Jurglanis* Anderson Dep. (Ex. C) at 64:22-65:10.  But when asked whether there is any way to determine whether any of the "sort of different things" were substantial or negligible in causing his disease, Dr. Anderson agreed that he had no basis for determining what exposures, if any, were significant enough to cause disease because he simply assumed there was exposure somewhere and lumped all potential exposures together.  *Id.* at 68:1-9; *see also Hass* Anderson

6

Dep. (Ex. D) at 71:9-25 ("It's kind of the old what straw broke the camel's back? Is it the first straw or the last straw? And I can't sort out which of those.").

But the mere fact that an exposure may have increased the risk of injury (to some unknown and potentially tiny degree) is not proof that the exposure *caused* the injury. *See* Reference Manual on Scientific Evidence 552, 609 (3d ed. 2011) (explaining that "an association is not equivalent to causation," and that epidemiological studies do not address specific causation).[4] Scientific evidence is only admissible where "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). These conclusions turn the scientific method on its head: rather than evaluating all potential causative factors before reaching their conclusion (and rather than evaluating the extent of Mr. Spychalla's exposures to a particular defendant's products), Plaintiff's experts simply assume all exposures were causative based on nothing more than a temporal association which increased the risk of developing the disease. *See, e.g.*, *Jurglanis* Anderson Dep. (Ex. C) at 40:16-41:15. This is sheer unscientific advocacy, which by its very nature lacks "the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co.*, 526 U.S. at 152.

## II.     PLAINTIFF'S MEDICAL CAUSATION EXPERTS' OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE THE PRODUCT OF AN UNRELIABLE METHODOLOGY.

Under *Daubert v. Merrell Dow Pharm.*, a court must make "a preliminary assessment of whether the reasoning or methodology underlying the [putative expert's] testimony is scientifically valid." 509 U.S. at 592-93; *accord id.* at 590 (opinions must be grounded in the

---

[4] The difference between risk and causation is undisputed: not everyone who is exposed to asbestos actually develops an asbestos-related disease. *Jurglanis* Anderson Dep. (Ex. C) at 87:20-88:11; *see also Hass* Anderson Dep. (Ex. D) at 90:12-23.

7

"methods and procedures of science"). An expert "must explain the methodology and principles supporting the opinion and the opinion must amount to "more than a 'bottom line.'" *Quad/Graphics, Inc. v. One2One Commc'ns, LLC*, 09-CV-99-JPS, 2011 WL 4478440, at *3 (E.D. Wis. Sept. 23, 2011) (quoting *Minix v. Canarecci,* 597 F.3d 824, 835 (7th Cir. 2010)); *accord. Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."). The opinions of Drs. Anderson and Bedrossian must be excluded as their "methodology" fails *Daubert's* reliability and relevance considerations.

Courts around the country have rejected the "every exposure" theory of causation that plaintiff's experts purport to espouse here.[5] And while the Seventh Circuit has yet to consider

---

[5] *See, e.g.*, *Bostic v. Georgia-Pac. Corp.*, 10-0775, 2014 WL 3797159, at *3-4 (Tex. July 11, 2014) (holding that "even in mesothelioma cases proof of 'some exposure' or 'any exposure' alone will not suffice to establish causation" because the every exposure theory "effectively accepts that a failure of science to determine the maximum safe dose of a toxin necessarily means that every exposure, regardless of amount, is a substantial factor in causing the plaintiff's illness [and t]his approach negates the plaintiff's burden to prove causation by a preponderance of the evidence"); *Howard ex rel. Estate of Ravert v. A.W. Chesterton Co.*, 621 Pa. 343, 78 A.3d 605, 608 (Pa. 2013) (holding that (1) the theory that each and every exposure, no matter how small, is substantially causative of disease may not be relied upon as a basis to establish substantial-factor causation for diseases that are dose-responsive; (2) in cases involving dose-responsive diseases, expert witnesses may not ignore or refuse to consider dose as a factor in their opinions; (3) bare proof of some *de minimus* exposure to a defendant's product is insufficient to establish substantial-factor causation for dose-responsive diseases; and (4) some reasoned, individualized assessment of a plaintiff's or decedent's exposure history is necessary); *Anderson v. Ford Motor Co.*, 950 F. Supp. 2d 1217, 1225 (D. Utah 2013) ("[T]he Court finds that the every exposure theory of causation does not meet the standards set by Rule 702 and Daubert and must be excluded."); *Smith v. Ford Motor Co.*, 2013 WL 214378, at *2-3 (D. Utah Jan. 18, 2013) (excluding expert's "any exposure" opinion as unreliable and explaining that "[j]ust because we cannot rule anything out does not mean we can rule everything in"); *Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 430 (9th Cir. 2012) *on reh'g en banc sub nom. Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) *cert. denied,* 13-1252, 2014 WL 1496421 (Oct. 6, 2014) (reversing jury verdict for plaintiff because district court "failed to fulfill its obligations under *Daubert*" when it did not adequately consider a motion to exclude plaintiff's expert's "single fiber" theory of causation and, instead, allowed the expert to testify because he had been allowed to offer the same opinion in other cases); *Betz v. Pneumo Abex, LLC*, 615 Pa. 504, 550, 44 A.3d 27, 57 (Pa. 2012) (explaining that "[s]imply put, one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive" and finding that the expert's "any-exposure opinion is in irreconcilable conflict with itself"); *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 26, 712 S.E.2d 537, 542 (Ga. Ct. App. 2011) (affirming exclusion of expert under *Daubert* where the expert "did not offer an opinion that any specific company's products caused [the plaintiff's] disease but stated instead that his cumulative occupational exposure to all of the products contributed to cause the disease" and explaining that the "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis"); *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 226-27 (Pa. 2007) ("[W]e do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation.");

such a *Daubert* challenge, at least one court within the Seventh Circuit has soundly rejected the theory. *Krik v. Crane Co.*, No. 10-cv-7435, 2014 WL 7330901, ___F. Supp. 3d ___ (N.D. Ill. Dec. 22, 2014) (holding the theory that "any exposure to asbestos fibers *whatsoever* constitutes an underlying cause of injury to the individual exposed" is not sufficiently reliable under *Daubert*). In *Krik*, the court excluded "every exposure" testimony where the plaintiff failed to "offer any expert testimony as to how much asbestos exposure he experienced and whether that dosage of exposure was sufficient to cause his lung cancer," instead arguing that "a single exposure to asbestos is enough and every additional exposure contributed as well." *Id.* at *4. The court did not mince words: "[t]his is not an acceptable approach for a causation expert to take." *Id.* Moreover, the "'Any Exposure' theory also is inadmissible given [the plaintiff's] experts' wholesale failure to base their opinions on facts specific to this case." *Id.* at *5. Here, Plaintiff's experts purport to offer opinions indistinguishable from the plaintiff in *Krik*, and for the same reasons, the testimony of Drs. Anderson and Bedrossian should be inadmissible here.

## A. Drs. Anderson and Bedrossian Critically Failed to Consider Dose.

Plaintiff's experts' "everything is cumulative" theory does not comport with the most fundamental principle of the science of toxicology — the dose makes the poison. Reference Manual on Scientific Evidence 636 (3d ed. 2011). In other words, disease results only when exposures to a substance reach a level that overwhelms the body's defenses, called a "threshold" point. Aspirin, alcohol, sunlight, even known "poisons" like arsenic, are only poisonous if the

---

*Borg-Warner Corp. v. Flores*, 232 S.W.2d 765, 771-72 (Tex. 2007) ("[A]bsent any evidence of dose, the jury could not evaluate the quantity of respirable asbestos to which Flores might have been exposed or whether those amounts were sufficient to cause asbestosis."); *In re W.R. Grace & Co.*, 355 B.R. 462, 476 (Bankr. D. Del. 2006) (finding the "'no threshold' model . . . flies in the face of the toxicological law of dose-response, that is, 'that the dose makes the poison . . . .'"); *In re Toxic Substance Cases*, No. A.D. 03-319, 2006 WL 2404008, at *6-7 (Pa. Com. Pl. Aug. 17, 2006); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 611 (N.D. Ohio 2004) (concluding that the "any exposure" theory is "not supported by the medical literature"), *aff'd sub nom. Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488 (6th Cir. 2005).

9

dose is high enough, and are otherwise harmless or even beneficial at lower doses. *See* David L.

Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12

J.L. & Pol'y 5, 11 (2003) ("All substances are poisonous—there is none which is not; the dose

differentiates a poison from a remedy").

Mesothelioma, like lung cancer, is a dose-response disease, *Hass* Anderson Dep. (Ex. D)

at 82:12-16, 137:4-11, but Plaintiff's experts' "every exposure" opinions ignore the principle of

dose. *See Krik*, 2014 WL 7330901. For instance, Dr. Anderson explained that (1) he makes no

effort to assess the extent of exposure to a particular defendant's product, *Hass* Anderson Dep.

(Ex. D) at 56:21-57:12, (2) he makes no attempt to estimate the dose of exposure, *see id.* at

67:22-68:14, and (3) he makes no effort to determine if the decedent had any exposure to

asbestos from a GE product, *id.* at 133:23-134:16. Rather, he simply claims that all exposures

are cumulative, *id.* at 134:10-16, with the illogical exception that undefined, small exposures

somehow do not count, *id.* at 137:12-18. *See also Jurglanis* Anderson Dep. (Ex. C) at 108:1-

110:22, 112:9-114:14. More importantly, he has agreed that "there's no way of saying which

[alleged exposure] was more substantial or less substantial or negligible in causing . . . disease"

because in formulating his opinions, he is not "shown any measurements of what [the plaintiff's]

exposures could have been." *Jurglanis* Anderson Dep. (Ex. C) at 68:1-7. He has further

admitted that he cannot express a dose because, like in this case, "we don't have any

measurements" such that "we never can reconstruct a new dose in fibers. *So that's speculative*

*estimates.*" *Id.* at 58:22-59:5 (emphasis added).

Similarly, Dr. Bedrossian explained that (1) he does not care about the extent of a

plaintiff's exposure to a particular defendant's product; rather "one single fiber from one single

product" counts, February 15, 2012 Deposition of Carlos Bedrossian, M.D., *Gehrt v. ACandS,*

10

*Inc., et al.*, E.D. Pa. No. 2:08-cv-92066-ER ("Bedrossian Dep. Vol. II") (Ex. G) at 45:5-10; (2) exposure criteria such a "frequency" or "duration" are "not relevant" to his opinions, *id.* at 46:12-16; and (3) he makes no effort to estimate plaintiff's total dose of asbestos exposure, *see* Bedrossian Dep. Vol. I (Ex. E) at 128:23-129:9. Rather, he simply claims that all exposures are cumulative, *id.* at 148:16-21, with the exception that background exposures are somehow not cumulative. Bedrossian Dep. Vol. II (Ex. G) at 53:14-54:3 (asserting that it "makes no scientific sense" to consider "one fiber" of background exposure).

By ignoring the concept of dose, the "every exposure" theory reduces the analysis to an exposure test. Dr. Anderson demonstrated just how minimal the exposure test is:

- If a person smoked a pack of Marlboro cigarettes every day for thirty years – but once smoked a single Winston cigarette during that period – Dr. Anderson believes that the Winston would be a contributing factor in the person's lung cancer. *Jurglanis* Anderson Dep. (Ex. C) at 112:9-113:6.

- All exposures count because "all we're doing is once the disease is developed, the exposures that are known to be associated with that disease contributed to it" regardless of the significance of that exposure. *Id.* at 108:19-21.

Accordingly, no matter what exposure is input to Drs. Anderson's and Bedrossian's "model," the result is always the same: the defendant's product was a substantial factor. The theory is advocacy, not science.

Conveniently for Plaintiff, Drs. Anderson's and Bedrossian's theory excludes background fibers as causes of disease, even though millions of such fibers can be found in a normal human lung. In other words, in their view, exposure to a single fiber in excess of background levels counts, but exposure to background levels of asbestos fibers does not count. Their attempt to draw the threshold line at background levels is unreliable; without a reliable methodology setting the minimum threshold of exposure, their entire "every exposure" theory is without foundation.

11

For instance, Dr. Bedrossian believes that every exposure to asbestos is significant. Bedrossian Dep. Vol. II (Ex. G) at 26:6-27:2 (counting exposures to "any type of fiber in any type of material"). He further opines that "one single fiber from one single product" counts. *Id.* at 45:5-10. Nevertheless, Dr. Bedrossian discounts the risk posed by background fibers, claiming that it makes "no scientific sense" to consider "one fiber" from the ambient air. *Id.* at 53:14-54:3. Dr. Bedrossian cannot explain away the discrepancy between his opinion that a single fiber of asbestos from a product counts, but that a single fiber of asbestos from a background exposure does not count. And because he excludes background levels, Dr. Bedrossian acknowledges that there is *some level* of exposure to asbestos that is not important. He employed no reliable scientific methodology, however, when he picked background exposure as this threshold. Indeed, as Dr. Bedrossian admits, "background" levels vary. *Id.* at 52:4-16. Accordingly, an exposure to a single fiber above background levels in rural environment "x" may be nothing more than ambient exposure in urban environment "y." *Id.* Using Dr. Bedrossian's "background" threshold, however, the single fiber above background levels in environment "x" counts — and Dr. Bedrossian would use it to blame a defendant — but the same quantitative level of exposure in environment "y" would not be deemed important. These inconsistent results highlight the unreliability of Dr. Bedrossian's decision to select "background" as the threshold level of exposure.

"But, as the Seventh Circuit observed in *Schultz v. Akzo Nobel Paints, LLC,* 721 F.3d 426, 433–34 (7th Cir. 2013), the notion that it is theoretically possible that *any* amount of exposure could cause injury is different from an opinion that *the particular level of dosage experienced by a plaintiff was sufficient* to cause his or her particular injury." *Krik*, 2014 WL 7330901, at *4-5 (emphasis added) (finding the "Any Exposure" theory inadmissible, *inter alia,*

12

Case 1:11-cv-00497-WCG   Filed 01/15/15   Page 12 of 20   Document 88

"given [plaintiff's] experts' wholesale failure to base their opinions on facts specific to this case"). The so-called "methodology" shared by Drs. Anderson and Bedrossian is impermissibly based "less on a scientific understanding of the specifics of [the decedent's] workplace exposure and the potential effects on [the decedent], and more on merely a general understanding of [the toxin], with only unsupported speculation having been used to relate the general knowledge to the facts surrounding [the decedent's] exposure." *Wintz By & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997). Under the opinions of Drs. Anderson and Bedrossian, even assuming Mr. Spychalla was exposed to a GE asbestos-containing product at all, it would not have mattered whether he was exposed to respirable airborne asbestos from such a product for one minute, one hour, one day, or a thousand days. They can have *no idea* what the extent of Mr. Spychalla's exposure to a GE product was, yet, it is their opinion is that such exposure caused Mr. Spychalla's disease. This "reasoning" makes a mockery of the term "substantial" and is no different than saying a drop of water in the ocean and a trillion cubic feet of water both "substantially" contribute to the sea level. Any fifth-grader would recognize such absurdity as both illogical and unscientific.

Because Drs. Anderson and Bedrossian failed to conduct or rely on tests measuring the amount of actual exposure required in order to opine "whether the dose to which the plaintiff was exposed is sufficient to cause the disease," their opinions fail *Daubert*'s reliability standards and must be excluded. *Krik*, 2014 WL 7330901, at *5 (excluding testimony of experts who failed to present "any individualized analysis of [the plaintiff's] level of exposure"); *Wintz*, 110 F.3d at 513; *Brown*, 765 F.3d at 776 ("[E]xperience without reliable, testable methodology is not sufficient."); *see also, e.g.*, *Bostic v. Georgia-Pacific*, No. 10-0775, S.W.3d , 2014 WL 3797159, at *2 (Tex. July 11, 2014) (holding plaintiffs must establish causation separately with

13

respect to each defendant's product through scientifically reliable evidence and must present evidence of the quantum of asbestos exposure from each defendant's product because proof of "'some exposure' or 'any exposure' alone will not suffice to establish causation").

> **B.  The "every exposure" theory is a litigation construct that has not been tested, is not found in peer-reviewed literature, and has no known or knowable error rate.**

A "key question" in the *Daubert* analysis is whether an expert's theory has been tested. *Daubert*, 509 U.S. at 593. The "every exposure" theory has not been tested — it is simply a litigation construct. For example, Dr. Anderson was unable to point to any scientific literature testing the theory or measuring the increased risk of cancer associated with low levels of exposure. *Hass* Anderson Dep. (Ex. E) at 85:13-20; *see Daubert*, 509 U.S. at 593 ("[a]nother pertinent consideration is whether the theory or technique has been subjected to peer review and publication"). Without having data to support their theory, there is no way to assess its error rate. *Hass* Anderson Dep. (Ex. D) at 81:3-19 (admitting that "49 percent of the time I might be wrong"); *see also Krik*, 2014 WL 7330901, at *5 ("[T]he expert reports and briefs filed by [plaintiff's] counsel provided this Court with only generalized citations to scientific literature, with no indication that these are the authorities upon which its experts intend to rely. Nor do [plaintiff's] experts identify any peer-reviewed scientific journal adopting the 'Any Exposure' theory, or cite any medical studies that set forth a known rate of error for this analysis."); *see also Daubert*, 509 U.S. at 594 (a court "ordinarily" should consider a technique's known or potential rate of error).

The theory fails because it lacks "the necessary research and data to show" that the plaintiff's alleged exposure to asbestos from the defendant's specific product "constitutes sufficient exposure to cause [the plaintiff's] cancer on its own . . . or that such exposure amounted to more than an insignificant or *de minimis* factor in the development of the disease."

14

*Smith*, 2013 WL 214378 at *3; *accord. Krik*, 2014 WL 7330901, at *5.  Consequently, the "every exposure" theory "'is, at most, scientifically grounded speculation: an untested and potentially untestable hypothesis'" inadmissible under *Daubert*.  *Krik*, 2014 WL 7330901, at *5.

Given the lack of testing and support for the theory, it is unsurprising that Plaintiff's experts' opinions are speculative.  Plaintiff's experts' "method" was to start with the *assumption* that Mr. Spychalla was exposed to enough asbestos to cause his injury.  In doing so, Drs. Anderson and Bedrossian relied upon a work history provided to them by Plaintiff's counsel and reviewed medical records, but failed to consider any coworker testimony or written discovery, conducted no examinations or interviews, and analyzed no product information.  Anderson Rep. (Ex. A) at 2; Bedrossian Rep. (Ex. B) at 1.  Dr. Anderson has admitted his partial and one-sided summary is untested for accuracy and completeness as he simply takes the information he receives from Plaintiff's counsel at "face value" and assumes it is accurate.  *See, e.g.*, *Jurglanis* Anderson Dep. (Ex. C) at 28:20-29:18, 34:12-36:1; *see also* January 7, 2014 Deposition of Henry Anderson, *Luna v. CBS Corp., et al.*, E.D. Pa. No. 2:13-cv-60002 ("*Luna* Anderson Dep.") (Ex. H) at 58:22-59:2 ("Q.  So you didn't do anything to independently test either the accuracy or the completeness of that work history that was provided to you by plaintiff's counsel, correct?  A.  That's correct.  My assumption is that it's an accurate reflection.").  As the information he had was incomplete, *at best*, he can only offer speculative generalities as to what extent a plaintiff was exposed to asbestos fibers:

> Q.   So you have no ability to prioritize [a plaintiff's] various activities as contributing substantially or less substantially or negligibly to his development of mesothelioma?
>
> A.   ***No, I can't do any quantitative comparison*** or – I don't – and in reading his deposition, an 84-year-old gentleman trying to remember back in the 1940s.  And I know the first deposition spent umpteen lines trying to delineate how many motors he worked on.  ***I would simply say that he***

15

> *spent 40 hours a week doing this kind of work, and was he exposed to*
> *asbestos continuously during that? Probably not.*

Q. Well, when he wasn't exposed to asbestos in his job, that clearly didn't
contribute to his mesothelioma; correct?

A. Right. If he was in an area where there was no asbestos fiber
contamination in the air.

Q. And he could be in an area where there was asbestos products, but if there
[sic] were not disturbing the products, that wouldn't be something that
contributed to his disease; correct?

A. If somebody had been disturbing the product an hour before and it's still
suspended in the air, you don't need to be disturbing continuously to
generate an environment with respirable fibers in it.

Q. I didn't say continuously. I just said you can be around a piece of asbestos
lumber and there can be no respirable asbestos in the air; correct?

A. Well, that's possible, sure.

Q. So if part of your work is to be around it and there's no respirable asbestos
in the air, that's not a contributing event? That's not contributing to his
development; correct?

A. If you're not breathing in asbestos, then there's no risk.

*Jurglanis* Anderson Dep. (Ex. C) at 65:11-66:23 (emphasis added). Such conjecture cannot be

permitted as "the courtroom is not the place for scientific guesswork, even of the inspired sort."

*Rosen*, 78 F.3d at 319.

In addition, Dr. Anderson's attempt to prop up his "method" as being supported by and

consistent with the "Helsinki Criteria" fails. *See* Anderson Rep. (Ex. A) at 3-4 ("Mr. Leonard

Spychalla's malignant pleural mesothelioma meets the Helsinki Criteria for asbestos

causation."). While Dr. Anderson may rely upon the Helsinki Criteria as a basis for establishing

he actually has a "methodology," this approach ignores that Dr. Anderson himself has recently

conceded the following about the Helsinki Criteria:

- It is not a study itself, but a consensus statement of participants, *Hass* Anderson Dep.
(Ex. D) at 52:4-15;

16

- It is not a randomized controlled clinical trial, cohort or case study, *id.* at 67:9-19;

- The authors report no "p" values or confidence levels, *id.* at 69:9-13;

- No medical association or organization has adopted these Criteria, *id.* at 73:16-74:2.

*See also, e.g.*, *Butler*, 310 Ga. App. at 27, 712 S.E.2d at 542 (excluding expert opinion espousing an "any exposure" theory where, among other things, he "relied upon the Helsinki Criteria in reaching his opinion, [but] he admitted that this report did not address whether a component of a cumulative exposure of asbestos is causative").

Even assuming Dr. Anderson's "methods" have some indicia of reliability, Dr. Anderson violated his own methodology. Namely, while Dr. Anderson asserts that he relies on the Helsinki Criteria to support his so-called methodology, he ignores and/or misapplies some of its key tenets. For example, the Helsinki Criteria requires a "moderate exposure" history, yet Dr. Anderson has no basis to even qualitatively speculate as to Mr. Spychalla's claimed exposure to any GE product. The Helsinki Criteria also requires the existence of a reliable work history, which Dr. Anderson did not demand in this case. Instead, he relied upon an untested summary provided to him by Plaintiff's counsel and he considered none of the deposition testimony in this case. He has no case-specific exposure history from which to conclude, to a reasonable degree of medical certainty, that any specific product (much less a GE product) was the cause or the proximate cause of the decedent's disease. Dr. Anderson's theory that "every exposure" – regardless of magnitude – caused Mr. Spychalla's disease cannot be substituted for actual evidence of specific causation.

### A. Drs. Anderson and Bedrossian Should Not Be Allowed To Offer Any Opinions About "Significance."

Even if Dr. Anderson or Dr. Bedrossian were allowed to opine that every exposure to asbestos was the cause of Mr. Spychalla's mesothelioma — and they should not — they should

17

not be allowed to opine that every fiber of asbestos is "significant" or "substantial."  Indeed, as

Dr. Anderson explained, his use of these terms has no medical meaning:  "But that wouldn't be a

published paper.  You wouldn't – what you're doing is asking for an opinion, *and it's a*

*constructed legal kind of issue* as significant as opposed to the concept of dose-response. . . .

You won't see in the medical records 'significant' used."  *Hass* Anderson Dep. (Ex. D) at 85:21-

86:13.

Similarly, Dr. Bedrossian's characterizations of significance are based on the following

premise:  "because [he] can't rule any one [exposure] out, [he] includes them all in."  Bedrossian

Dep. Vol. II (Ex. G)  at 43:25-44:2.  Dr. Bedrossian did not support his reasoning by citing any

scientific literature or methodology.  Instead, Dr. Bedrossian attempts to justify his opinion by

claiming that "it's an admission of a scientific limitation."  *Id.* at 45:11-20.  Under Rule 702 and

*Daubert*, however, an expert cannot rely on a *lack* of science to support his "scientific" opinion.

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("The courtroom is not the place

for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it.").  In

short, Drs. Anderson's and Bedrossian's characterizations of significance reflect their personal

interpretation of a legal term of art.  This sort of opinion testimony is inadmissible.

## CONCLUSION

Plaintiff cannot bear her burden of establishing the reliability of Drs. Anderson's and

Bedrossian's testimony, and their opinions must be excluded.  Because Drs. Anderson and

Bedrossian are Plaintiff's sole case-specific medical causation experts, their exclusion leaves

Plaintiff without the evidence required to establish her claim that Mr. Spychalla's injuries were

caused by a GE product containing asbestos.  For the foregoing reasons, GE requests that this

Court exclude the opinion testimony of Plaintiff's experts Henry Anderson, M.D. and Carlos

Bedrossian, M.D.  A proposed order is attached hereto as Exhibit I.

Dated:  January 15, 2015                     Respectfully submitted,

                                             GENERAL ELECTRIC COMPANY


                                             By:   /s/ Timothy E. Kapshandy

                                                   Timothy E. Kapshandy
                                                   SIDLEY AUSTIN LLP
                                                   One South Dearborn Street
                                                   Chicago, Illinois  60603
                                                   Telephone:  (312) 853-7000
                                                   Facsimile:  (312) 853-7036
                                                   tkapshandy@sidley.com

                                                   David E. Frank
                                                   Nora E. Gierke
                                                   GIERKE FRANK LLC
                                                   7604 Harwood Avenue
                                                   Suite 203
                                                   Wauwatosa, WI 53213
                                                   Telephone:  (414) 395-4600
                                                   Facsimile:  (414) 921-4108
                                                   dfrank@gierkefrank.com
                                                   ngierke@gierkefrank.com

                                                   *Attorneys for Defendant General Electric
                                                   Company*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Timothy E. Kapshandy*