IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)<br><br>SPYCHALLA v. AVCO Corporation et al | E.D. WI Case No. 11-cv-497<br>*Remanded from E.D. PA 12-CV-60004*<br><br>Hon. W. C. Griesbach |

**PLAINTIFF'S RESPONSE TO DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION IN LIMINE TO EXCLUDE CAUSATION TESTIMONY OF HENRY ANDERSON, MD AND CARLOS BEDROSSIAN, MD**

Plaintiff responds to and opposes General Electric Corporation's (GE) Motion in Limine to exclude Plaintiff's Causation Experts as to plaintiff expert's Henry Anderson, MD, and Carlos Bedrossia, MD.

BACKGROUND

General Electric and other defendants ask the Court to strike the medical causation testimony of plaintiff's expert witnesses Dr. Henry Anderson and Dr. Carlos Bedrossian.[1]  Dr. Anderson's opinion is based on his specialty of occupational and environmental medicine and Dr. Bedrossian's opinion is based on his specialty as a pathologist.  The defense motion primarily focuses on admission of the "every exposure" statement, which plaintiff has stipulated will not be offered.  The balance of the testimony is admissible and the motion is overbroad to the extent the relief sought is complete exclusion of experts as witnesses.

---

[1] The other defendants filed joinders or made reference to the same arguments in their motions.

1

Defendants do not contest Dr. Anderson's or Dr. Bedrossian's qualifications.

*Dr. Anderson*

Dr. Anderson is the preeminent government official in the State of Wisconsin, from which this case arises, on the subject of occupational and environmental disease. (Ex 2 at 1) Since 1991, Dr. Anderson has served as the Chief Medical Officer for Occupational & Environmental Health for the Wisconsin Division of Public Health. Since 1980, Dr. Anderson has served as the State Epidemiologist for Occupational and Environmental Disease in the Wisconsin Division of Public Health. Dr. Anderson began studying the health effects of asbestos as a resident medical doctor at Mount Sinai Hospital in the 1970s. Since 1989, Dr. Anderson has been an adjunct professor at the University of Wisconsin medical school. Dr. Anderson is an author of numerous published peer review articles dealing with asbestos disease. General Electric makes no challenge to the qualifications of Dr. Anderson.

To form his opinions, Dr. Anderson reviewed documents concerning Leonard Spychalla's work history and medical records. (Ex 1) The records reviewed included types of aircraft products for which defendants are alleged to be responsible. In his report Dr. Anderson stated these parts included: "engine, frame, wheels, gears, fuselage, elevators, flaps and brakes. Maintenance work included removing and replacing asbestos containing gaskets and asbestos-containing brake linings." (Ex 1 at 2.) These same aircraft parts are alleged to be asbestos containing and causes of the mesothelioma. Dr. Anderson opines that Spychalla developed malignant pleural mesothelioma as a result of his occupational exposure to asbestos from these aircraft components. (Ex 1 at 4.)

2

*Dr. Bedrossian*

Dr. Bedrossian is a board certified pathologist with a focus on environmental disease and a subspecialty certification in cytopathology, and a retired Colonel in the U.S. Air Force. (Ex 3.) Dr. Bedrossian is a pathologiest at Norwegian American Hospital in Chicago, IL, a professor of pathologist at Rush Medical College in Chicago, IL, and a solo practitioner in pathology of environmental diseases at Biomedical Concepts in Oak Park, IL. Dr. Bedrossian's work has included involved in a longitudinal study of individuals exposed to asbestos. Dr. Bedrossian has published extensively in the area of cytopathology of lung diseases, including asbestos diseases. (Ex 3.) Defendants do not challenge the qualifications of Dr. Bedrossian.

Dr. Bedrossian's report states his understanding that Spychalla's asbestos exposures included engines, gears, fuselage, brakes, gaskets, brake linings, insulation wire, equipment, glues and epoxies. (Ex at 1-2.) Dr. Bedrossian also concludes Spychalla's "total and cumulative exposure" to asbestos from these aircraft components was the cause of his mesothelioma. (Ex 4 at 6.)

Plaintiff stipulates to not offer testimony by an expert witness that "every exposure" contributes to cause the disease. (See Plaintiff's Response to Defendant The Boeing Company's Motion to Exclude Testimony Based on the "Any Exposure" Theory.) Plaintiff will limit the medical causation opinions at trial to the traditional hypothetical questions about causation. See Fed. Rule of Evid. 703 ("An expert may base an opinion on facts and data in the case that the expert has been made aware of . . .") The hypothetical questions will be based on evidence admitted about exposures to asbestos products for which each defendant is responsible. The

3

exposure evidence used in the hypothetical questions posed to Dr. Anderson and Dr. Bedrossian will be provided by other witnesses and documents.

ARGUMENT

I.   Dr. Anderson and Dr. Bedrossian follow proper scientific methodology

GE seeks to exclude Dr. Anderson's and Dr. Bedrossian's opinions formulated from review of medical records and other data about the products causing asbestos exposures of Leonard Spychalla. The information reviewed about the products and exposures includes a work history summary prepared by counsel and an industrial hygiene expert report. Based on these "facts, data, and assumptions" listed in the 26(a)(2) report, both experts reached opinions on causation.[2] As discussed below, accepted scientific methodology of reviewing the occupational exposure history of Spychalla and the medical records was followed by both experts.  Under Federal Rule of Evidence 702, methodology is the primary concern in assessing if expert testimony is reliable. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2012).

The causation opinions of Dr. Anderson and Dr. Bedrossian are based on established scientific methodology of considering medical records, the work history of asbestos exposure, the disease which developed, and the latency period.[3] The methodology is described in the

---

[2] Rule 26(b)(4)(c)(iii) states experts may consider "assumptions" in forming opinions providing those are disclosed in the report.

[3] The every exposure testimony which plaintiff stipulates will not be offered is not the "methodology" for attribution. GE cites to the case of *Krik v. Crane Co., et al.* (ND-IL Case No. 10-cv-7435), the trial court on remand found the "every exposure" testimony is not admissible, but still allowed the expert (Dr. Frank) to testify about causation. (Ex 12.) The court in *Krik* held as follows: "Accordingly, to the extent that Plaintiff will present facts at trial that he was exposed to asbestos at ExxonMobil facilities and Dr. Frank and Parker will rely upon such facts at

4

criterion for attribution of diseases to asbestos exposure developed at an international conference of medical experts in Helsinki, Finland, in 1997. Dr. Anderson uses the "Helsinki criteria" as one factor in his methodology for attributing mesothelioma to asbestos. (Ex 5 at 83-84.) Dr. Bedrossian also uses the Helsinki criteria and explains in a past deposition how the Helsinki criteria are widely regarded as authoritative because of the large number of medical and other professionals involved in writing the document:

> A. . . . in the Helsinki Convention, it was a several-weeks meeting or several days meeting where they were completely opposite one another in terms of their opinions, plus they were multi-specialists. They included not only clinicians but surgeons, pathologists, epidemiologists, pathologists, industrial hygienists. It was a broader group.
>
> Q. It included plaintiffs' experts in the asbestos litigation, right?
>
> A. Yeah, and defense experts.

(Ex 6 at 78-79.)[4]

The Helsinki criteria state for mesothelioma "a history of significant occupational, domestic, or environmental exposure to asbestos will suffice for attribution. . . . An occupational history of brief or low-level exposure should be considered sufficient for mesothelioma to be designated as occupationally related." Tossavainen, "Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and attribution," 23(4) *Scand. J. Work., Environ Health* 311 at 313 (1997). (Ex 7.) Dr. Anderson in past testimony describes how the Helsinki criteria serve as an important scientific document in attributing asbestos as the cause of asbestos related disease.

---

trial, the experts will be permitted to testify at trial regarding such exposure, subject to the Court's ruling precluding testimony as to the "Any Exposure" theory." (Ex 12 at 12-13.)

[4] The Helsinki conference participants are listed in Exhibit 7 at pages 315-16.

5

Case 1:11-cv-00497-WCG   Filed 03/09/15   Page 5 of 12   Document 121

> Q: And what is the significance of the Helsinki Criteria to you, as a practitioner in occupational medicine or public health, when you consider whether mesothelioma is caused by asbestos or not?
>
> A: From a public health standpoint, what we really want is to have guidelines. Physicians are looking for, well, how do I either – what test do I need to do to diagnose something, how do I – a person says, why did I develop this? What are the criteria I should use to say, yeah, I think it's due to this?
>
> And prior to Helsinki, everybody did their own thing. So one person says, nah, don't worry about that; and another says, oh boy, that's the only thing that's caused the problem.
>
> *So one of the really valuable things for this Helsinki Criteria is it brought together, again, experts from around the world. So it's a consensus document. Not everybody on the panel agreed with all of it, but they all agreed on the – the weight of it, this is how to go about attributing – or how much exposure, how to determine when a disease, like mesothelioma or asbestos or lung cancer, you can say yes, that was caused by this occupational exposure.*
>
> ...
>
> So we use it very heavily in Wisconsin to say, it's a fairly short document, look at that, and it provides the general guidance for how you should go about diagnosing mesothelioma and looking at when can you – or when should you attribute it to asbestos exposure.

(Ex 8 at 22, emphasis added.)

GE criticizes reliance on the Helsinki criteria, but points to no scientific publication rejecting the use of the criteria. (GE brief at 16-17) The Helsinki criteria, developed specifically for attribution of causation, are the product of deliberations of more than 30 international scientific experts (both plaintiff and defense) in the field of asbestos diseases. Having been vetted by such a large group of experts, the Helsinki criteria satisfy the *Daubert* factors of "peer review" and "general acceptance." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 1996).

6

Case 1:11-cv-00497-WCG   Filed 03/09/15   Page 6 of 12   Document 121

The likelihood of developing mesothelioma, even at lower levels of asbestos exposure, is recognized in other scientific publications besides the Helsinki criteria. In 1980 the United States Environmental Protection Agency (EPA) stated that "No safe limit or 'threshold' of exposure is known." (Ex 9.) In 1991, the EPA and National Institute of Occupational Safety and Health (NIOSH) issued a document stating that "NIOSH contends that there is no safe airborne fiber concentration for asbestos." (Ex 10.) In its 2006 "Position on Asbestos" report, the World Health Organization also stated that "there is no safe threshold level of exposure." (Ex 10.)

GE also argues the medical causation opinions are not admissible absent "tests of amount of actual exposure" to GE products. (GE brief at 13.) The Seventh Circuit recognizes such precise quantification of exposure as to the particular injured person is not required for admission of expert opinions:

> We do not mean to suggest, of course, that hands-on testing is an absolute prerequisite to the admission of expert testimony. Rule 702 is designed to ensure that, when expert witnesses testify in court, they adhere to the same standards of intellectual rigor that are demanded in their professional work.*See Rosen*, 78 F.3d at 318; *Bammerlin*, 30 F.3d at 901. This objective can be accomplished in a number of different ways, including through the review of experimental, statistical, or other scientific data generated by others in the field. Indeed, in *Porter v. Whitehall Labs., Inc.,* 9 F.3d 607 (7th Cir. 1993), we acknowledged that "there may be a situation in which personal experiments or observations meet the requirements of *Daubert*." *Id*. at 614 n.6.
>
> *Cummins v. Lyle Indus., 93 F.3d 362, 369 (7th Cir. Ind. 1996).*

Dr. Bedrossian explains why quantification of the amount of fibers is not a requirement for attributing mesothelioma to asbestos exposure:

> For example, pleural plaques are accepted as a sign of asbestos exposure, and then the Helsinki Convention, they decided that a good work history correlated very well with demonstration of asbestos fibers in the body. Since that time, the concentration of fibers is not a sine qua non requirement for you to link to mesothelioma.

7

(Ex 6 at 122.)

GE also argues the experts lack sufficient actual knowledge of the exposures without having read the coworker testimony. GE's argument is contrary to established practice. The expert reports are not their trial testimony. Medical experts need not have personal knowledge of the exposures of Spychalla or the asbestos content of aircraft parts. Rather, at trial Dr. Anderson and Dr. Bedrossian will answer hypothetical questions on causation based on evidence provided through other witnesses and documents about the product exposures. The procedure of using hypothetical questions to elicit opinions from experts is well established in trial work.

> There is a long tradition of the use of hypothetical questions in American courts.
>
> . . . .
>
> Modern rules of evidence continue to permit experts to express opinions based on facts about which they lack personal knowledge, but these rules dispense with the need for hypothetical questions. Under both the Illinois and the Federal Rules of Evidence, an expert may base an opinion on facts that are "made known to the expert at or before the hearing," but such reliance does not constitute admissible evidence of this underlying information.

*Williams v. Illinois*, 132 S.Ct. 2221, 2234 (U.S. 2012), citing to Fed.R.Evid. 703.

II. Dr. Anderson's and Dr. Bedrossian's testimony is proper under WI law

Wisconsin substantive law on causation of asbestos related diseases governs this diversity action. The standards to be applied regarding evidence of exposure and causation in asbestos cases are set out in *Horak v. Building Services Industrial Sales Company*, 750 N.W.2d 512 (Wis. App. 2008), and *Zielinski v. A.P. Green Industries, Inc.*, 661 N.W.2d 491 (Wis. App. 2003). District Judge Eduardo Robreno, the supervising judge of asbestos MDL-875, followed these

8

cases in an early Wisconsin exposure case, *Dion v. Anchor Packing Co.*, 10-cv-64681-ER, Doc. # 168, Oct. 4, 2011 Order, n. 1 at 7 (E. D. Pa. 2011). The same Wisconsin cases continue to be cited by Judge Robreno in the written opinion on all summary judgment motions in the instant case. (Ex 13 at 3, Ex 14 at 3, Ex 15 at 3.)

In Wisconsin a plaintiff is not required to prove that defendant's asbestos was "the cause" of asbestos-related disease, only that it was "a cause". *Spychalla v. AVCO Corp., at al,* 11-cv-497 Doc #333 July 23, 2014 (E.D. Pa. 2014)(Ex 13 at 3) citing to *Horak*, 750 N.W.2d at 516. Judge Robreno stated in ruling on the GE summary judgment motion: "In Wisconsin, the cause of an accident is not determined by its most immediate factor; rather 'there may be several substantial factors contributing to the same result.'" *Sampson v. Laskin*, 224 N.W.2d 594, 597-98 (Wis. 1975). *Spychalla v. AVCO Corp., at al,* 11-cv-497 Doc #333 July 23, 2014 (E.D. Pa. 2014)(Ex 13 at 3.)

GE's motion to strike the medical causation testimony and opinions seeks to impose a new standard in Wisconsin asbestos cases which does not comport with past decisions. GE ignores the "a cause" standard for products liability cases in Wisconsin. Dr. Anderson, Dr. Bedrossian, and other medical professionals recognize the "cumulative" exposure as the cause of asbestos disease. Dr. Anderson and Dr. Bedrossian can opine whether the exposures resulting from products or conduct of a particular defendant are "a cause" within the cumulative exposure.

III. Cross-examination is preferred to exclusion of expert testimony

Barring the entire testimony of Dr. Anderson and Dr. Bedrossian is extreme given that GE will have ample opportunity to try to discredit the opinion through cross-examination and through the testimony of their own experts. The Seventh Circuit has held in multiple rulings that "[d]etermination on admissibility should not supplant the adversarial process":

> [Defendant] is, of course, critical of the quality of [the expert's] testimony and does not believe that it ought to have been credited by the district court. These criticisms do not go to admissibility but to the appropriate weight that should be accorded to the evidence. As we noted in Gayton, "[d]etermination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination."

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010).

> The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.

*Smith v. Ford Motor Co.,* 215 F.3d 713 (7th Cir. 2000).

> In the end, each criticism that the district court had in assessing the reliability of Sullivan's testimony was a comment on the soundness of the factual underpinnings of his calculation. Indeed, one could envision the district court's rulings as a roadmap for ISOP's cross-examination of Sullivan. But the district court supplanted that adversarial process with its admissibility determination, leaving Manpower with no competent evidence to prove its business interruption damages and ensuring summary judgment for ISOP. We conclude that the district court set the bar too high and therefore abused its discretion in barring Sullivan's testimony about the business interruption loss.

*Manpower, Inc. v. Ins. Co. of Pa., 732 F.3d 796, 810 (7th Cir. Wis. 2013)*

Fundamentally, GE's motion is a disagreement with Dr. Anderson's and Dr. Bedrossian's reliance on scientific literature such as the Helsinki Criteria and other peer reviewed publications. Concerns about scientific literature should be reserved for cross examination.

IV. Dispositive motion deadline has passed

GE's filed a motion in the MDL-875 to exclude Dr. Anderson's and Dr. Bedrossian's testimony which was deferred for ruling by the MDL-875 supervising Judge Eduardo Robreno in his opinions denying summary judgment. The motion in MDL-875 was based on exclusion of the "every exposure" opinion which plaintiff stipulates not to offer in evidence. To the extent the instant motion GE now argues the motion can treated as excluding the remainder of the expert testimony, the MDL court deadline for dispositive motions has passed.

Medical causation testimony and Dr. Anderson's testimony about state of the art both relate to necessary elements of plaintiff's case. U.S. Magistrate Judge Stephen Crocker already ruled dispositive motions in limine are precluded on remand of Cascino Vaughan Law Offices from MDL-875. *Bushmaker v. AW Chesterton Company* W.D. WI Case No. 09-cv-726 Doc. # 43, order entered November 19, 2012. (Ex 16.) Judge Crocker's *Bushmaker* ruling was followed and adopted in *Morris v. CBS Corporation*, E.D. WI Case No. 04-c-216 Doc. #101, order entered on July 28, 2013.[5] (Ex 17.) The procedural history in *Spychalla* is no different than in *Bushmaker* or *Morris*. The MDL-875 scheduling order in *Spychalla* required defendants to file dispositive motions before remand. (Ex 18). The suggestion of remand order in *Spychalla* states dispositive motions have been resolved and the cases are remanded as "trial ready." (Ex 19 at 2.)

---

[5]The basis for the rulings which preclude additional dispositive motions in Cascino Vaughan Law Offices cases on remand from MDL-875 is set forth in the briefing which plaintiff filed in the *Morris* case. (Ex S13).

11

The Seventh Circuit has cautioned against attempts at wholesale exclusion of an expert based on challenges to "pieces" of their testimony. In Smith v. Ford Motor Co., 215 F.3d 713,721 n.3, the court stated:

> We note that it would be appropriate for a district court to apply *Rule 702* 's requirements to individual pieces of proposed testimony, so that if the district court found a particular part of that testimony irrelevant or unreliable, it could exclude that portion of the testimony without striking the proposed evidence in its entirety.

In *Spychalla* plaintiff stipulates to withdrawal of the testimony that is the focus of defendant's argument. The balance of the testimony should not be impacted.

## Conclusion

Dr. Anderson and Dr. Bedrossian are qualified experts utilizing methodology grounded in accepted medical science. The motion should be denied on the merits. GE's motion to completely exclude the experts should also be denied as an untimely dispositive motion.


Dated: March 9, 2015

/s/ Robert G. McCoy
Attorney for plaintiff

Robert G. McCoy
Michael P. Cascino
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com