# IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN GREEN BAY DIVISION

SHIRLY SPYCHALLA, Individually and as
Special Administrator of the Estate of
LEONARD J. SPYCHALLA, Deceased

        Plaintiff,

Case No. 11-CV-00497

v.

AVCO Corporation, et al.

        Defendants.

## DEFENDANT THE BOEING COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SUMMARY JUDGMENT ASSERTING GOVERNMENT CONTRACTOR DEFENSE

The Boeing Company, erroneously named as Boeing Aerospace Operations, Inc., (hereinafter, "Boeing"), by its attorneys, Mueller, S.C., hereby moves the Court for leave to file a Motion for Summary Judgment on the basis of the government contractor defense. As grounds for its motion, Boeing states as follows:

## INTRODUCTION

As more fully explained below, Boeing respectfully submits that good cause and substantial justification exist to grant leave to file a motion for summary judgment on the basis of its government contractor defense. The government contractor defense is an affirmative legal defense established by the Supreme Court under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), shielding government contractors from state tort liability for products manufactured

1

for the U.S. Armed Forces. Plaintiff alleges that Leonard Spychalla ("Decedent") was exposed to asbestos through work with or around DC-3 aircraft,[1] a commercial passenger aircraft sold to commercial airlines. Accordingly, at the outset of this case, Boeing was unaware of its potential government contractor defense. After the close of discovery, however, Plaintiff produced documentation that enabled Boeing to initiate an investigation leading to retention of publicly available Federal Aviation Administration ("FAA") documents which establish that the DC-3 aircraft at issue were actually manufactured by Boeing as military aircraft and converted by third-parties to commercial aircraft following World War II. Boeing did not obtain the FAA information and supporting military aircraft documentation necessary to establish its government contractor defense prior to the deadline for filing summary judgment motions in MDL 875. Once MDL 875 denied Boeing's motion for summary judgment with leave to refile in the U.S. District Court for the Eastern District of Wisconsin, however, Boeing took the necessary steps to provide Plaintiff with the documents on which it intended to rely in support of its government contractor defense. Ample time is available for briefing and ruling on Boeing's motion for summary judgment on the basis of its government contractor defense. Plaintiff will suffer no prejudice as result of Boeing's assertion of its government contractor defense at the summary judgment stage. Furthermore, granting Boeing leave would be wholly consistent with a major objective of Rule 56: "One of the principal purposes of the summary judgment rule is to isolate

---

[1] DC-3 aircraft were manufactured by Douglas Aircraft Corporation ("DAC") in the late 1930s and early 1940s. DAC merged with McDonnell Aircraft Corporation ("MAC") in 1967 to form McDonnell Douglas Corporation ("MDC"). MDC became a wholly-owned subsidiary of The Boeing Company ("Boeing") in August, 1997 and ceased to exist as of January 1, 2010. For the sake of consistency in these proceedings, we will continue to refer to the defendant as Boeing throughout even where the conduct referred to might have been undertaken by DAC or MDC.

and dispose of factually unsupported claims" and "it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In a hearing that took place on February 4, 2015, this Honorable Court directed that Boeing seek leave to pursue its government contractor defense through a separate motion for summary judgment. The aim behind addressing the government contractor defense individually was two-fold. First, to eliminate concern that issues related to the government contractor defense, including plaintiff's review of the documentation relating to the fabrication and procurement of military aircraft, could disrupt scheduling designed to resolve the so called "bare-metal" defense, which is common to all defendants in this case. Second, to allow Boeing to present additional information to the Court on timing issues related to its discovery of the applicability of the government contractor defense to the instant matter.

## PROCEDURAL HISTORY

### I.     Procedural Background Relevant to this Motion.

In May 2009, Plaintiff filed a civil action in Milwaukee County Circuit Court, which she then voluntarily dismissed, and re-filed in the U.S. District Court for the Eastern District of Wisconsin in May 2011. In January, 2012, the case was transferred to MDL 875.

Plaintiff alleged that the Decedent was exposed to asbestos in connection with work on or around DC-3 aircraft. (*See* Plaintiff's Response to Standard Interrogatories – June 4, 2012 And Amendment Dated September 26, 2012, *Spychalla v. Avco Corporation et al.*, United States District Court, Eastern District of Pennsylvania (Philadelphia) Civil Docket Case No. 2:12 CV 60004 ER, ("Spychalla PA-E") Docket Entry Number (ECF No.) 287 # 4, pg. 6.) Fact discovery closed in this case on October 1, 2012. (*See* Scheduling Order, Spychalla PA-E ECF No. 41.)

No witnesses deposed in advance of the discovery deadline testified regarding work performed by Decedent on or around DC-3 aircraft. (Declaration of Lance E. Mueller dated March 9, 2015 ("Mueller Dec.") ¶ 2.) Furthermore, Plaintiff produced no documentary evidence as to Decedent's operation or maintenance of any specific DC-3 aircraft in advance of the discovery deadline. (*Id*.)

On November 19, 2012, the parties deposed the final product identification witness in the case, Decedent's son, Dean Spychalla ("Dean"). Dean is the only product identification witness deposed in this case who testified regarding a Boeing product. Dean mentioned the DC-3 amongst the planes that were present at Basler Flight Services in 1968 or 1969, when he was approximately 16 years old. (*See* Deposition Transcript of Dean Spychalla, Spychalla PA-E ECF No. 287 #12.) That testimony, however, is inadmissible against Boeing. Three days prior to Dean's deposition, on November 16, 2012, Boeing's counsel, Lance Mueller, sent an e-mail to Plaintiff's counsel confirming Plaintiff's prior representation that Dean was not being offered as a witness against Boeing. (Mueller Dec. ¶ 3.) On that basis, Mr. Mueller did not attend Dean's deposition in person in Coral Gables, Florida. At no time during Dean's deposition did Plaintiff's counsel indicate that they were rescinding their prior stipulation that Dean's testimony would not be offered against Boeing. (*Id*.) Accordingly, Boeing did not cross-examine Dean. (*Id*.) Further, Boeing maintains that Dean's testimony remains inadmissible against it pursuant to Plaintiff's stipulation.[2] No other product identification witnesses testified regarding work performed on or around a Boeing aircraft.

_____

[2] The Notice pertaining to Dean Spychalla's Deposition did not identify MDC as a defendant about whom Mr. Spychalla was expected to testify as required by the "Protocol for Plaintiff and Co-Worker depositions to be taken in Cascino Vaughan Law Offices MDL 875 cases assigned to Magistrate Judge

4

On November 20, 2012, approximately seven weeks after discovery closed, and one day after Dean's deposition completed, Plaintiff produced Decedent's flight logs which evidenced that he had operated DC-3 aircraft at both Basler Flight Services in Oshkosh, Wisconsin (hereinafter, "Basler"), between October 28, 1966 and February 10, 1968, and Wisconsin Department of Natural Resources in Madison, Wisconsin (hereinafter, "WDNR"), between October 1972 and April 1978. (Mueller Dec. ¶ 4.) Decedent's flight logs, which were produced after the close of discovery, were the first information Boeing received in this case regarding the specific aircraft that Decedent is alleged to have worked on or around. (*Id*.)

On May 17, 2013, nearly seven months after fact discovery had closed, the parties deposed plaintiff's aviation expert, Rodney Doss ("Doss"). (Mueller Dec. ¶ 6.) At that time, Doss produced FAA Registry Inquiry results identifying the serial and model number of the DC-3 aircraft at issue. (*Id*.) Doss's FAA Registry Inquiry results triggered Boeing to perform additional research concerning the aircraft in question, including a search through available FAA records.[3] (*Id*.) Boeing was not able, however, to complete its investigation before the MDL 875 deadline for filing motions for summary judgment on July 1, 2013.[4] (*Id*.) Boeing therefore based its motion for summary judgment on the insufficiency of the evidence in establishing that

David R. Strawbridge" ("Protocol"). Thus, his deposition testimony cannot be used against MDC. (Protocol, ¶ 11.)

[3] On February 1, 2013 Boeing advised plaintiff's counsel by e-mail that it would perform a search and share the information it had regarding the delivery and transfer of certain Douglas aircraft if plaintiff would provide a tail number, fuselage number or serial number for the aircraft in question. That offer and the lack of response by plaintiff were memorialized in writing by letter dated February 19, 2013. Plaintiff has never responded to the offer. (Mueller Dec. ¶ 5.)

[4] It is important to reiterate that the document produced by Doss did not in and of itself indicate that Boeing had a valid government contractor defense. Rather, it merely provided Boeing with the information it could use to further explore the defense.

the Decedent was exposed to even a single asbestos-containing component – at any time – from a Boeing product.

After the July 1, 2013, deadline for summary judgment motions before MDL 875, Boeing obtained the FAA records which evidenced the fact that the two DC-3 aircraft at issue in this case were actually originally a C-47 and C-53D aircraft, respectively, manufactured by Boeing for the U.S. Military. (Mueller Dec. ¶ 7.) Prior to obtaining the FAA records, Boeing had no knowledge that the government contractor defense was applicable to the claims raised by Plaintiff as to Decedent's work on and around a DC-3 aircraft. (*Id.*)

On July 22, 2013, shortly after Boeing's motion for summary judgment was filed and before further briefing on motions for summary judgment took place, MDL 875 entered a "show cause order" staying all Cascino Vaughn cases on its docket until further order. (*See* Show Cause Order Spychalla PA-E ECF No. 290.) The stay of all proceedings imposed by MDL 875 lasted until January 17, 2014, when the Court ordered that Plaintiff's responses to the summary judgment motions filed on July 1, 2013 were due February 14, 2014. (*Id.* ECF No. 301.) In other words, there was no opportunity for Boeing to raise the government contractor defense at that stage as briefing on the earlier motions was merely continued.

This case was remanded to this Honorable Court on November 3, 2014 with leave being expressly granted Boeing "to refile [its summary judgment motion] in the transferor court." (*Id.* ECF No. 350.) Boeing promptly resumed efforts to ascertain the nature and extent of its government contractor defense, and notified counsel that it would pursue that defense as part and parcel to its summary judgment filings during a scheduling conference held before this Court on November 12, 2014. (Mueller Dec. ¶ 8.) Information that Boeing received from the FAA

6

confirmed that Boeing was not involved in converting the C-53 and C-47 aircraft at issue in this case to DC-3 aircraft and revealed the true extent of the availability and application of the government contractor defense. (*Id.*) As a result, Boeing raised the defense in connection with its motion for summary judgment timely filed with the Court on January 15, 2015.

## DISCUSSION

As noted above, there is no dispute that Boeing's assertion of the government contractor defense in the context of summary judgment was timely in relation to the scheduling order issued by this Court in November, 2014 and the Suggestion of Remand issued by MDL 875.

I.     **Allowing for Summary Judgment Motion Practice on the Government Contractor Defense is Consistent with the Purpose of Federal Rule of Civil Procedure 56 and Interests of Judicial Economy.**

The government contractor defense serves as an absolute bar to all of plaintiff's claims against Boeing in this case. The two Boeing aircraft that Decedent is alleged to have worked with or around were manufactured by Boeing as C-47 and C-53 aircraft for the U.S. Military. Boeing had no further contact with either of these aircraft following their sale to the U.S. Government in or around 1942. Both of these aircraft were later converted in the mid-1940s to commercial aircraft by third-parties, Northrup Aircraft, Inc. (hereinafter, "Northrup") and National Air Transport Company (hereinafter, "NATC"), for commercial operation. Boeing is entitled to judgment as a matter of law on all claims asserted against it by Plaintiff because the government contractor defense applies to the military aircraft manufactured by Boeing that are exclusively at issue. *See generally*, *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

"Concerns about judicial economy have their greatest force when . . . there is no doubt about how those claims should be decided." *See RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d

7

476, 481 (7th Cir. 2012). There is little doubt here about the applicability of the government contractor defense as they relate to plaintiff's claims. The interests of judicial economy and the primary purpose of summary judgment itself support the idea that Boeing's government contractor defense be addressed through motion practice prior to trial. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990) (The primary purpose of summary judgment is to avoid trial where there is no genuine issue of material fact in dispute).

Stated another way, allowing Boeing to pursue its government contractor defense at this stage in the proceedings is consistent with the important design of Rule 56 "to isolate and dispose of factually unsupported claims" and the rule that "it should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. 317, 323-24 (1986). Indeed, the importance of summary judgment as a means of narrowing claims at trial or avoiding an unnecessary trial has long been recognized. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *id*. at 323, and it is designed to "promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10A Charles Alan Wright et al., *Federal Practice and Procedure* at § 2712. Further, it is beyond serious dispute that allowing Boeing's motion, even at this stage in the case, would be in the interests of judicial economy. *See, e.g., Thomas v. Kroger Co*., 24 F.3d 147, 149 (11th Cir. 1994) (*quoting Matia v. Carpet Transport, Inc.*, 888 F.2d 118, 119 (11th Cir.1989)).

8

The government contractor defense has direct application to this case, and was properly identified by Boeing in a complete and timely manner. Allowing that it be presented to the Court by independent motion serves the goals of applicable procedural rules and the interests of fairness and judicial economy.

## II. The Court Can Properly Consider the Declarations and Exhibits of Larry Fogg in Support of the Government Contractor Defense.

As the primary basis for denying Boeing the opportunity to raise the government contractor defense, Plaintiff has argued that the declaration and supporting exhibits of Larry Fogg ("Fogg") should be stricken as untimely. For the reasons stated in Boeing's Response to Plaintiff's Motion to Strike (ECF No. 98), those documents and materials should be allowed and may be considered by the Court.

First, there is no basis for the suggestion that the disclosure of Larry Fogg was untimely. Fogg was employed by Boeing for more than thirty (30) years and his declaration is based upon personal knowledge and review of Boeing's business records. Federal Rule of Civil Procedure 30(b)(6) allows a legal entity such as Boeing to designate witnesses to testify on the organization's behalf and requires only that the designated witnesses be able to testify about information "known or reasonably available to the organization." Fogg is Boeing's corporate representative. As such, Boeing was not required to disclose Fogg as an expert as Plaintiff intimates.

Moreover, plaintiff neglected to take advantage of the opportunity to conduct discovery directed to Fogg and Boeing's government contractor defense at the appropriate time. The MDL Court quashed plaintiff's notices of the defendants' corporate representative depositions on the grounds that they were overbroad, unduly burdensome, and failed to "describe with reasonable

9

particularity the matters for examination" as required by Fed. R. Civ. P. 30(b)(6). (*See* Order, Spychalla PA-E ECF Nos. 122-124.) Moreover, while plaintiff served written discovery upon Boeing, to which Boeing responded, none of that discovery sought any information relevant to the government contractor defense or required the disclosure of Fogg as a possible witness.

On its face, plaintiff's claim related to Decedent's work on and around the DC-3, a commercial aircraft, does not implicate the government contractor defense, which is applicable to products made for the U.S. Government. Rather, it was not until plaintiff produced Decedent's flight logs and the FAA Registry Inquiry results obtained by Doss,[5] that Boeing was able to obtain the FAA records for the aircraft at issue. Indeed, plaintiff's argument that Boeing's production of materials in support of its government contractor defense in advance of filing its motion for summary judgment was prejudicial is disingenuous. Due to the timing of plaintiff's production of documentation and evidence relating to the DC-3 aircraft at issue, Boeing was affirmatively precluded from establishing its government contractor defense in advance of the discovery deadline in this case. Boeing was not able to initiate its investigation until it received identifying information as to the DC-3 aircraft at issue from plaintiff, which did not occur until after the discovery deadline had passed. Accordingly, under no circumstances could Boeing have produced the documentation at issue at any time other than after the discovery deadline and before filing its motion for summary judgment. Moreover, even if plaintiff had properly sought discovery related to Fogg or Boeing's government contractor defense, at the time discovery closed, Boeing was unaware that the government contractor

---

[5] Plaintiff's expert, Doss', FAA Registry Inquiry results evidence that plaintiff was capable of obtaining the FAA records demonstrating that the DC-3 aircraft at issue were originally military aircraft. Further, the FAA Registry Inquiry results suggest that Doss, at a very minimum, took the initial steps towards obtaining those documents, long before Boeing was able to do so.

defense was applicable due to plaintiff's delay in producing the documentation in her possession relating to the DC-3 aircraft at issue.

Assuming for the sake of argument that the disclosure of Mr. Fogg and his supporting documents was untimely, which Boeing denies, his declaration and exhibits still should be considered by the Court. In *BASF Corp. v. Aristo, Inc.*, 2012 WL 2159252, *7 (N.D.Ind.,2012), the Court denied Plaintiff's Motion to Strike a late disclosure, finding that the, "violation was harmless under Rule 37 because the totality of the elements of harm- (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date" did not warrant striking the disclosure. Here, there is no information to suggest any bad faith or willfulness in not disclosing Fogg at an earlier date. Boeing initiated the disclosure of the documents relating to its government contractor defense upon learning that it may assert such a defense in its motion for summary judgment before this Honorable Court. Further, any prejudice suffered by the plaintiff – although the result of her own actions and inactions relating to discovery – can be easily cured by permitting additional discovery aimed at this particular issue without disruption of the trial date several months away.

### III. This Court Can and Should Amend the Scheduling Order to allowing Boeing to Pursue Summary Judgment on the Basis of the Government Contractor Defense.

Plaintiff has also implied that this Court should not entertain the government contractor defense, as Boeing should have asserted it in motion practice in MDL 875. As explained above, however, Boeing did not have the information necessary to substantiate the government

11

contractor defense by the deadline imposed in the MDL. Further, the Suggestion of Remand issued by the MDL Court clearly specified that leave was granted for Boeing "to refile [summary judgment motions] in the transferor court." The Court can permit an amendment to the scheduling order issued in these proceedings which would allow Boeing to pursue the defense.

Federal Rule of Civil Procedure 16(b)(4) vests this Court with the authority to modify a scheduling order including dates for the filing of dispositive motions. *See, e.g.*, Rule 16 Advisory Committee's notes (1983). Indeed, such an order may be amended upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4); *see also Trustmark Insurance Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.'") Moreover, "[r]ule 56's purpose" is "to avoid useless trials" where "one of the parties is entitled to judgment as a matter of law." *Utility Control Corp. v. Prince William Constr. Co*., 558 F.2d 716, 719 (4th Cir. 1977). Accordingly, it is understandable that the law recognizes that it is preferable for courts to address the merits of a summary judgment motion after a prior motion deadline has passed than not at all. *See Lexicon, Inc. v. Safeco Ins. Co. of American, Inc*., 436 F.3d 662, 670 n.6 (6th Cir. 2006).

"Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking amendment." *Trustmark Insurance Co.*, 424 F.3d at 553. (quotation marks and citation omitted); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)(primary consideration to determine whether a litigant has established good cause after a deadline has passed is to examine whether the litigant has established diligence.) Here, there is no information before the Court to suggest that Boeing acted with undue delay, bad faith or dilatory motive. Rather, Boeing acted

promptly and reasonably in attempting to ascertain the nature and extent of the government contractor defense once it was presented with the information it needed from Plaintiff to explore the issue and the opportunity to raise the matter with the Court. Boeing was diligent in so doing, and permitting it to raise the defense by separate motion at this time is warranted.[6]

### IV. Appropriate Scheduling can Eliminate any Prejudice to Plaintiff.

Plaintiff cannot reasonably suggest that she has been prejudiced by the assertion of the government contractor defense at this summary judgment stage as she failed to obtain the publicly available information related to the DC-3 aircraft at issue which revealed that they were in fact military aircraft. Further, plaintiff's late disclosure of the materials in her possession relating to the DC-3 aircraft at issue prevented Boeing from determining the applicability of its government contractor defense before the close of discovery. Nevertheless, the trial date in this case has been set for September, 2015. Thus, there is ample time for the parties to separately brief and argue this particular issue. Further, there is sufficient time to allow for plaintiff to review the information and materials offered by Boeing in support of its defense. In other words, there is ample time to allow for appropriate measures designed to eliminate any prejudice to plaintiff.

### CONCLUSION

For the foregoing reasons, and any others appearing to the Court, Boeing respectfully requests that this Court grant Boeing leave to file a motion for summary judgment on the basis of the government contractor defense.

---

[6] Moreover, allowing an independent motion at this stage in the case would be entirely consistent with not only the spirit of the Federal Rules of Civil Procedure 56 as described above, but the timing contemplated by that Rule. That is, Fed.R.Civ.P. 56(b), provides that any party may move for summary judgment at any time until 30 days after the close of all discovery. Discovery is not yet entirely closed in this case.

Dated: March 9, 2015

MUELLER, S.C.

By: ___/s/ Lance E. Mueller
      Lance E. Mueller
      WI State Bar No. 1041811

ATTORNEYS FOR THE BOEING COMPANY

4098 N. Lake Dr.
Milwaukee, WI 53211
Phone: 414-435-1111
Facsimile: 414-755-7400
Email: lem@muellersc.com