UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHIRLEY D SPYCHALLA,

        Plaintiff,

v.                                  Case No. 11-CV-497

BOEING AEROSPACE OPERATIONS INC et al.,

        Defendants.

---

**DECISION AND ORDER ON PRETRIAL MOTIONS**

---

Plaintiff Shirely Spychalla, individually and on behalf of her deceased husband, Leonard Spychalla, brought this action for strict product liability and negligence against numerous defendants. Plaintiff claims Mr. Spychalla contracted mesothelioma and died as a result of exposure to the defendants' asbestos products during his decades-long career as a pilot and aviation mechanic at various locations in Wisconsin. The case was transferred to the Eastern District of Pennsylvania for consolidated pretrial proceedings as part of the United States Judicial Panel on Multidistrict Litigation (MDL) No. 875, and then remanded to this court for trial on November 4, 2011.

Before the court are motions for summary judgment brought by the three remaining defendants, The Boeing Company (hereinafter Boeing)[1], Cessna Aircraft Company (Cessna) and General Electric Company (GE). Also before the court are several motions in limine filed by the defendants and Boeing's motion for leave to file an additional summary judgment motion based on the "government contractor defense." As explained below, the motions for summary judgment will

---

[1] Boeing was erroneously named Boeing Aerospace Operations Inc. in the complaint.

be denied, the motions in limine will be granted in part and denied in part, and Boeing's motion for leave to file will be granted.

## BACKGROUND

Leonard Spychalla was a pilot and aircraft mechanic who worked for Basler Flight Service Inc. in Oshkosh, Wisconsin from 1966 to 1972, the Wisconsin Department of Natural Resources in Madison, Wisconsin from 1972 to 1978, and Kimberly-Clark Aviation in Appleton, Wisconsin from 1978 to 1991. Plaintiff has produced evidence that Mr. Spychalla was exposed to asbestos in the brakes, gaskets and other parts in Boeing's McDonnell Douglas DC-3 aircraft at Basler and at the DNR. She has produced evidence that Spychalla was exposed to asbestos while inspecting and maintaining Cessna's model 150s, 172s and 182s at Basler. Finally, Plaintiff has produced evidence that Spychalla was exposed to asbestos-containing gaskets in GE's CF 700 and CF 34 engines while at Kimberly-Clark Aviation. Spychalla was apparently diagnosed with mesothelioma on May 27, 2008 and died less than two weeks later on June 7, 2008.

All three defendants moved for summary judgment in MDL 875 on the ground that there was insufficient evidence to establish causation of Spychalla's injuries with respect to any product for which the respective defendant could be liable. The MDL court, Judge Eduardo Robreno, denied all three motions, citing testimony of Spychalla's coworkers and Plaintiff's aircraft maintenance expert witnesses about the kind of work Spychalla would have performed during his employment. For example, in denying Boeing's motion, Judge Robreno wrote:

> Plaintiff has presented evidence that Decedent worked as an airplane pilot and mechanic, including maintaining hundreds of—and piloting hundreds of flights on—the McDonnell Douglas DC-3 aircraft during the period 1966 to 1978. She has

2

> presented evidence from experts to establish that Decedent would have been exposed to asbestos from various parts on these aircraft (such as brakes, gaskets, hydraulic hose coverings, firewall shields,) during various routine activities (such as routine maintenance work and post-flight inspections of the aircraft, including its brakes and engines). Under Wisconsin law, a reasonable jury could conclude from the evidence in the record that Decedent was exposed to respirable asbestos dust from various component parts used in McDonnell Douglas aircraft such that it was a substantial factor in the development of his illness.

(ECF No. 114-1 at 7.) Judge Robreno reached similar conclusions from the evidence regarding Cessna and GE. (ECF Nos. 116-1 at 9 & 117-1 at 8.)

The motions were denied with leave to re-file in this court on remand, however, because Judge Robreno found "no evidence" that the various component parts from which the asbestos exposure could have occurred were manufactured or supplied by the defendants. The court explained that this is because there is no evidence that Mr. Spychalla was exposed to respirable asbestos dust from a component part original to the defendants' aircrafts or engines or that any replacement part to which he was exposed was manufactured or supplied by the defendants. Accordingly, Judge Robreno concluded that each defendant "is liable for Decedent's alleged exposures only if Wisconsin law does not recognize the so-called 'bare metal defense.'" (ECF Nos. 114-7 at 7, 116-1 at 10 & 117-1 at 8–9.) Because Judge Robreno considered this court to be better situated to address this question of Wisconsin law, the motions were denied with leave to re-file upon remand here.

As explained below, all three defendants have thus moved for summary judgment under the "bare metal defense," arguing to this court that the defense is a reasonable extension of Wisconsin tort law. Cessna and GE also argue, as they did in MDL 875, that Plaintiff's evidence is insufficient to establish causation. In addition to the bare metal defense, Boeing also asserted a "government

3

contractor defense" that it did not raise in MDL 875. The court struck the new materials Boeing relied on for the government contractor defense in an earlier oral ruling and directed Boeing to re-file its summary judgment motion with only the issues common to the other defendants, and to seek leave separately to file a motion based on the government contractor defense, which Boeing did.

Finally, the defendants have filed various motions in limine and the parties filed a number of other non-dispositive motions on issues that arose during briefing of the foregoing pre-trial motions. All of these matters have been fully briefed and the court held oral argument on all pending motions on May 12, 2015.

**ANALYSIS**

**I.  Summary Judgment Motions**

**A. Bare Metal**

Judge Robreno has characterized the "bare metal defense" as holding that "a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute." *Conner v. Afla Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012) (applying defense under maritime law). As noted, each defendant moves for summary judgment under this defense. Each defendant has submitted proposed findings of fact, consistent with Robreno's rulings as noted above, that Plaintiff has presented "no evidence" that Mr. Spychalla came into contact with any asbestos-containing product made or supplied by them. Plaintiff failed to timely respond to Defendants' proposed findings, and therefore Defendants argue they are entitled to have their proposed findings deemed uncontroverted for purposes of summary judgment. *See* Civil L.R. 56(b)(4) (E.D. Wis.).

4

For two reasons, however, it is far from clear, even assuming the Wisconsin Supreme Court would recognize the bare metal defense, that it applies in this case. First, as the moniker suggests, the defense would seem to apply to manufacturers of "bare metal" products to which component parts are added "downstream" in the production line. It is in this context that several of the Wisconsin trial court decisions the parties each rely on have accepted or rejected the defense in cases where manufacturers of boilers argue they cannot be held liable for harm caused by asbestos-containing insulation added to the boilers by other companies. Here, the defendants manufactured and sold completed products, the components of which wore out and were replaced with replacement parts presumably very similar to the original components. Thus, if the original completed products Defendants sold were unreasonably dangerous, they would seem to be defectively designed, and it makes little sense to preclude liability as a matter of law simply by virtue of the fact that the decedent did not come into contact with the defective products until some of the components had been swapped out.[2]

Second, it does not follow from Defendants' findings of fact that they are entitled to judgment as a matter of law under the "bare metal defense" as it is described in the leading state court decisions upon which Defendants rely. This is because none of the defendants have submitted a bona fide proposed finding of fact showing that they did not *specify* that asbestos-containing

---

[2] With respect to a manufacturer who makes one product to which distinct component parts are added, the Wisconsin Court of Appeals has adopted RESTATEMENT (THIRD) OF TORTS § 5 (1998), which essentially provides that a component part manufacturer is not liable for harm caused by a defective product manufactured by another, unless the component itself was defective or the component manufacturer "substantially participated in integrating the [component] into the . . . system. . . ." *Schreiner v. Wieser Concrete Products, Inc.*, 2006 WI App 138, ¶ 14, 294 Wis. 2d 832, 720 N.W.2d 525. This case provides little help in the scenario in this case, however, where the defendants manufactured or sold the system.

5

replacement parts should be used in their products.[3] In both of the leading cases cited by Defendants the state supreme courts expressly withheld judgment on whether one can be held liable for harm caused by another's product when the one *specified* or *required* the use of asbestos-containing replacement parts. *See O'Neil v. Crane Co.*, 266 P.3d 987, 996 n.6 (Cal. 2012) ("A stronger argument for liability might be made in the case of a product that *required* the use of a defective part in order to operate. In such a case, the finished product would inevitably incorporate a defect. One could argue that replacement of the original defective part with an identically defective one supplied by another manufacturer would not break the chain of causation. Similarly, if the product manufacturer specified or required the use of a defective replacement part, a stronger case could be made that the manufacturer's failure to warn was a proximate cause of resulting injury. . . . These difficult questions are not presented in the case before us, and we express no opinion on their appropriate resolution." (emphasis in original)); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, ¶ 38 (Wash. 2008) ("In light of the facts here, we need not and do not reach the issue of whether a duty to warn might arise with respect to the danger of exposure to asbestos-containing products specified by the manufacturer to be applied to, in, or connected to their products, or required because of a peculiar, unusual, or unique design.").

       Plaintiff's argument is that each defendant "owned or controlled the specifications" of what replacement parts could be used on its aircraft or aircraft engines and that each defendant "provided instructions on removal and installation of any replacement parts (including asbestos parts) used in

---

[3] Only Boeing submits that "[t]here is no evidence Decedent ever worked with or around a part actually manufactured, supplied, *or specified* by Boeing[,]" but the only factual support cited is Judge Robreno's ruling, which itself only speaks to the fact that Boeing neither manufactured or supplied asbestos parts. (*See* ECF No. 105, ¶ 32) (emphasis added).

6

its aircraft or aircraft engines." (ECF No. 111 at 1.) Plaintiff argues it was therefore foreseeable to each defendant that aviation mechanics like Mr. Spychalla were going to be exposed to asbestos while conducting routine maintenance on their products and become injured. (*Id.*) As noted above, there is no clear rebuttal from the defendants that the foregoing is not true. If it is true, I agree with Plaintiff that a reasonable jury could find the defendants' specification that asbestos-containing replacement parts in their products without a warning about the dangers of asbestos rendered the product unreasonably dangerous, or that the defendants' failure to warn was negligent. *See* Wis. JI–Civil 3242 (negligent failure to warn) & 3262 (strict liability failure to warn).[4] Rather than produce evidence that Defendants did *not* specify asbestos products be used with their products, Defendants challenge the sufficiency of Plaintiff's evidence. As discussed below, however, I find the defendants various arguments unpersuasive.

The principal evidence Plaintiff relies on is the February 26, 2015 declaration of her expert witness Rodney Doss. Doss prepared three substantially similar declarations (one for each defendant) used in Plaintiff's opposition to the bare metal defense. Relying on his significant training and experience as an aircraft mechanic and FAA Airworthiness Inspector, Doss explains that aircraft are required to be repaired and maintained using maintenance instructions provided by the Production Approval holding manufacturer. He says strict adherence to the "Instructions for Continued Airworthiness" of each aircraft, supplied by the manufacturer, is the only way to insure and maintain the airworthiness status of an aircraft. (ECF Nos. 111-3 through 111-5, ¶ 5.) He

---

[4]The parties ignore any distinction between Plaintiffs' strict liability and negligence claims in their papers, as well as the issue of whether Wisconsin's new strict liability law applies. In her complaint, Plaintiff sought declaratory relief that the application of Wisconsin's new law, Wis. Stat. § 895.047, would be unconstitutional.

7

explains that "Boeing owns or controls all manufacturing specifications for all Boeing aircraft[,]" (ECF No. 111-3, ¶ 6), and provides similar statements as to the other two defendants (ECF Nos. 111-4 & 111-5, ¶ 6). He explains that replacement parts must "meet or exceed" the manufacturer's specifications. He explains that any mechanic working on aircraft would follow the "Instructions for Continued Airworthiness" provided by the manufacturer concerning the installation of any part. He opines, based on his experience as a mechanic and his familiarity with the type of work Mr. Spychalla performed, that for most of the years Spychalla worked with Defendants' products, to "meet or exceed" the manufacturer's specifications would mean to use replacement parts containing asbestos. Finally, as an example of the manufacturer's specifications, he provides excerpts from a 1941 maintenance manual for Boeing's DC-3 and from a 1968 manual for Cessna's 100-series models. (ECF Nos. 111-3 at 6 and 111-4 at 6.)

It is worth reiterating that what Defendants did not offer in response to Doss's declaration is evidence of their own showing they did not specify that asbestos products be used when replacing component parts in their airplanes and engines. Of course, Plaintiff has the burden to prove her case—but here, however ultimately persuasive Doss's declarations may be, his statements are essentially not controverted.

Defendants argue that Doss's declarations are untimely because they are new opinions outside the scope of his initial report. However, in his initial report, Doss wrote: "Additional maintenance and repairs are required as a result of normal wear and tear and all repairs or part replacements must be done in accordance with manufacturers guidance and must be accomplished using parts or materials specified by the manufacturer." (ECF No. 111-14 at 2.) Thus his initial report is not as narrow as Defendants contend. And as the court indicated at oral argument, that an

8

expert's opinion will become more specific as the issues change and may arguably exceed the scope of what was in his or her initial written report (here, prepared in 2013) as the case proceeds, is not surprising and often not a good reason to exclude the new declarations.

Defendants also argue Doss's new declarations conflict with his deposition testimony. In Doss's deposition, he was asked: "When working on an aircraft, mechanics are supposed to follow the maintenance manuals, correct?" Doss responded: "That is correct, if there are specific instructions in the maintenance manual." (ECF No. 82-4 at 193.) Boeing argues this conflicts with Doss's new declaration in which he states that strict adherence to "Instructions for Continued Airworthiness" was the only way to insure and maintain the airworthiness status of an aircraft. I do not see the contradiction. It is clear from the deposition question and answer that mechanics were supposed to follow the service manual. All Doss's answer would appear to concede is that the manual may not provide a specific instruction for every conceivable issue that might arise with a broken-down aircraft. He does not say that sometimes the manuals exist and sometimes they do not.

Defendants also argue Doss has no foundation for his new statements. But his opinions are based on his personal knowledge; Doss's experience includes personally working on aircraft, including some experience with Defendants' aircraft, and in any event, supervising other mechanics working on these particular kinds of aircraft. To argue that Doss never worked for the defendant-companies or has limited experience with their aircraft does not necessarily disqualify him. What is at issue is whether Spychalla would have consulted the manuals and whether the manuals would have specified that replacement parts contain asbestos. He says so and therefore, given his considerable experience and without conflicting evidence, a jury could reasonably find Spychalla worked with asbestos products that were specified by Defendants.

9

Boeing also argues Doss's statement that all replacement parts meet or exceed the manufacturer's specifications conflicts with FAA records. Boeing points to records showing that the regulatory body that preceded the FAA had the capability and authority to approve changes to in-service aircraft without the involvement of the manufacturer. Again, however, Doss's statement is not contradicted. That someone could petition the regulators to approve use of a new product appears to show that the manufacturers *did* generally control what replacement parts would be used, in the absence of some intervention by the regulators.

Defendants also argue that Doss lacks design and engineering expertise to reliably opine that certain replacement parts would necessarily contain asbestos in order to function. This may or may not be true (Plaintiff's other airplane mechanic expert provided a similar opinion—that based on the temperatures the products would have to withstand, they must have contained asbestos [ECF No. 113-11 at 6, 7, 9]). However, it remains true that Doss says the manufacturers *did* specify use of asbestos part, regardless of whether they were necessarily required given the functionality of the product and the alternative technology available at the time.

Finally, Defendants argue that even if the court considered Doss's new declarations, Plaintiff's evidence is still not enough to avoid summary judgment. Boeing argues the 1941 service manual Doss provides would be out of date by the time Spychalla worked on any DC-3, and that the asbestos parts referred to in the excerpt provided are not the ones Spychalla is alleged to have worked with anyway. Boeing argues Doss's reliance on "Instructions for Continued Airworthiness" is misplaced because the FAA did not promulgate regulations governing uniform aircraft airworthiness standards until 1980, after Spychalla worked on any DC-3. Cessna makes the same point regarding its aircraft. Doss did not rely solely on the concept of airworthiness standards,

10

however, and he produced service manuals from before 1980 that specified that asbestos products be used. The fact that the FAA sought to and in 1980 did standardize airworthiness standards does not change the fact that according to Doss, a mechanic working in Spychalla's time would consult the manufacturer's service manual. And despite the fact that the particular manuals he would have consulted (i.e., for the parts and time periods at issue) are not in the record, one could reasonably take Doss's word for it and infer that similar such manuals did exist.

### B. Other Arguments

Boeing also argues that it is entitled to summary judgment notwithstanding the bare metal issue because Mr. Spychalla's injuries were not foreseeable. Boeing relies on the declaration of its own industrial hygiene expert, Charles Blake, who opined that "the state-of-the-art scientific knowledge regarding asbestos-related health hazards in the 1950s, 1960s, and 1970s, would not have included any information or knowledge that an aircraft mechanic performing general maintenance, repairs or overhauls of aircraft which incorporated the typical asbestos-containing components, or anyone present when such work was performed on aircraft, would have an increased risk of developing an asbestos-related disease." (ECF No. 79, ¶ 10.) However, even if true, Blake's opinion is only relevant to Plaintiff's negligence claim. The Wisconsin Supreme Court has held that "regardless of whether a manufacturer could foresee potential risks of harm inherent in its defective and unreasonably dangerous product, strict products liability holds that manufacturer responsible for injuries caused by that product." *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 56, 245 Wis. 2d 772, 629 N.W.2d 727. Also, Blake's opinion appears to contradict that of Plaintiff's industrial hygiene expert, Steven Paskal, who stated that "[s]tandards respecting the obligation to warn of the carcinogenicity of asbestos have been the same since the 1940s and have always required a clear

11

identification of asbestos presence and its most serious risk, cancer." (ECF No. 74-21, ¶ 3.)

Cessna and GE have also moved for summary judgment on the grounds that Plaintiff has failed to raise a genuine dispute of material fact that asbestos in products they supplied caused Mr. Spychalla's illness, and that Plaintiff's expert witness evidence as to causation is inadmissible. I find her expert evidence is admissible, however, as explained below. Further, Cessna's and GE's arguments as to causation raise the very same facts and law Judge Robreno addressed when he denied the defendants' motions for summary judgment earlier in this case. There is no indication that Judge Robreno intended to allow the defendants to raise these same arguments in this court; rather, it appears he denied summary judgment with leave to re-file solely on the discrete legal issue of whether Wisconsin law is consistent with the bare metal defense. Indeed, it would defeat the purpose of using MDL for consolidated pretrial proceedings if the parties could simply re-hash all of the arguments previously addressed by the MDL court. In any event, I find Judge Robreno properly applied Wisconsin law regarding product identification and causation in the asbestos context, and therefore I see no reason to revisit these issues now. Accordingly, Defendants' motions for summary judgment will be denied.

## II. *Daubert* Motions

Defendants have also filed a variety of motions in limine challenging Plaintiff's expert witnesses under *Daubert v. Merrell Dow Pharaceuticals*, 509 U.S. 579 (1993). First, each defendant moves to exclude the testimony of Plaintiff's airplane experts, Michael Plavchan and Rodney Doss, and Plaintiff's industrial hygiene expert, Steven Paskal. Judge Robreno considered objections to Plavchan and Doss's reports in denying Cessna's motion for summary judgment in MDL 875. He wrote:

12

> The only expert evidence that the Court needs to consider in order to decide Defendant's motion is the report of expert Michael Plavchan and the report of Rodney Doss. Because these experts have the appropriate background and work training and experience, and because they have provided a sound explanation as to how they are able to opine that the parts at issue contained asbestos and why Decedent would have been exposed to them during his work on Defendant's aircraft, the Court deems this expert evidence to be sufficiently sound and reliable to satisfy the requirements of Rule 702 of the Federal Rules of Evidence, and to survive a challenge pursuant to [*Daubert*].

(ECF No. 116-1 at 8–9.) The analysis was not particularly detailed and, as Defendants note, Judge Robreno's practice was to leave *Daubert* issues for the trial court on remand. Therefore Defendants have filed detailed arguments attacking these experts' opinions. Cessna also challenges the opinions Plavchan and Doss gave in their depositions to the extent they relied on the declaration of Mr. Spychalla's coworker Alan Bernette, which was created after these experts prepared their initial reports. Judge Robreno rejected this objection on the bases that the Bernette declaration itself was not untimely and did not contradict Bernette's prior deposition testimony, and that Doss and Plavchan's reliance on it was not improper because Plaintiff's counsel provided the Bernette declaration to Defendants before the experts' depositions.

Like Judge Robreno, I am satisfied that Plavchan, Doss and Paskal are qualified, that their methodology is reliable and that their opinions will assist the trier of fact understand the evidence and determine facts in issue. Generally, Defendants' main objection to Plavchan, Doss and Paskal is that their opinions are based on their own experience rather than factual information about this case. But Paskal's report was based on Spychalla's resume and his conversations with Spychalla's coworkers. (ECF No. 74-21, ¶¶ 4–5.) Doss's report was based on Mr. Spychalla's resume "and other materials pertaining to this case," as well as, of course, Doss's considerable experience doing similar work as Spychalla. Likewise, Plavchan's report was based on the fact that Mr. Spychalla was

13

a Certified Airframe and Powerplant mechanic and his expertise regarding the work such an individual would perform. (ECF No. 111-2 at 1.) What these experts need to know about the facts of this case is what type of work Spychalla performed. Using the sources and kinds of information that must be used since Spychalla is deceased, these experts applied their expertise, their experience, to the facts, which was that Spychalla performed various repairs and maintenance at airfields where the defendants' planes and products were used. This is in contrast to a case like that cited by Cessna where Judge Robreno rejected a similar expert report about the duties of an aircraft mechanic because in that case, the only specific evidence about the duties of the "mechanic" alleged to have come into contact with asbestos parts related to painting aircraft and other jobs that would not have exposed him to the asbestos parts in the planes. (ECF No. 74-29 at 5.) The motions to exclude Plavchan, Doss and Paskal's testimony will therefore be denied.

Defendants also move to exclude Plaintiff's medical experts from testifying based on an "any exposure" theory of causation, which essentially holds that any and every exposure to asbestos above background levels can be a significant contributing factor in the development of mesothelioma. Such a theory was rejected in *Kirk v. Crane Co.*, --- F. Supp. 3d ---- , 2014 WL 7330901 (E.D. Ill. 2014), where the district court concluded that it was not reliable. In response, Plaintiff has stipulated that no such testimony will be offered as part of her medical causation testimony. (ECF No. 109.)

As the defendants made clear in oral argument, however, their position is that Plaintiffs' causation experts should be barred from testifying entirely. Their main argument, similar to that regarding Plaintiffs' other experts, is that the medical experts' opinions are not sufficiently tied to the facts of this case—that their opinions are not based on actual levels of exposure to particular products the defendants are responsible for. A similar argument was made and rejected in *Kirk*,

14

however, and I find the reasoning in that case persuasive. 2014 WL 7330901, at * 6–7. It has already been decided in this case Plaintiff has produced sufficient evidence that Mr. Spychalla was exposed to products the defendants manufactured and/or assembled and sold. Plaintiffs' medical experts, whose qualifications the defendants do not challenge, will therefore be allowed to testify based on the evidence of his exposure that is introduced at trial. Plaintiffs' experts may not testify that "any exposure" to asbestos was a substantial factor in causing Spychalla's injuries, but beyond that prohibition, the defendants' arguments about the sufficiency of the evidence can be addressed through cross-examination. Aside from the caveat regarding testimony based on the "any exposure" theory, the motions in limine will therefore be denied.

**III.  Boeing's Motion for Leave to File**

Boeing has also filed a motion for leave to file a motion for summary judgment based on the "government contractor defense." The motion is based on the fact that the Boeing aircraft at issue were manufactured for use by the United States military in World War II. The planes were apparently converted to commercial planes by other companies after the war, long before decedent came into contact with them. Boeing states that it asserted this defense for the first time in this court (long after the MDL's summary judgment deadline) because it only learned what particular planes were at issue in this case after Plaintiff produced Mr. Spychalla's flight logs at the very close of discovery in MDL 875, and that only then could it have learned of the applicability of the defense. Plaintiff argues Boeing does not have good cause for its late submission, but as the court indicated at oral argument, it is not clear how Plaintiff would be prejudiced by Boeing's new defense, given that sufficient time remains before the trial date in which Plaintiff can depose witnesses Boeing relies on for support of its defense. Accordingly, Boeing's motion for leave is granted and Boeing is

15

ordered to file its summary judgment motion within ten days of the date of this order.

## CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED:**

Defendants' motions for summary judgment (ECF Nos. 69, 87 & 103) are **DENIED**.

Defendants' motions in limine (ECF No. 83 & 88) are **GRANTED IN PART AND DENIED IN PART**, and the remaining motions in limine (ECF Nos. 72, 82, 84, 85, 86 & 89) are **DENIED**.

Boeing's motion for leave (ECF No. 122) is **GRANTED** and Boeing is ordered to file its motion for summary judgment on the government contractor defense within ten days of the date of this order.

Cessna's motion to strike (ECF No. 138) is **DENIED**.

Boeing's initial motion for summary judgment (ECF No. 75) was withdrawn and is therefore **TERMINATED**.

Plaintiff's motions for leave (ECF Nos. 143, 145, 146 & 150) are **DENIED AS MOOT**.

Dated this 3rd day of June, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court